**The PEOPLE of State of Colorado, ex rel. the Honorable John–David SULLIVAN, Chief Judge of the Eighth Judicial District, Plaintiff–Appellant,**

v.

**Michael SWIHART, Defendant–Appellee.**

No. 95SA57.

Supreme Court of Colorado,
En Banc.

June 12, 1995.

Stuart Van Meveren, Dist. Atty., Eighth Judicial Dist., Todd L. Taylor, Sp. Prosecutor, Nineteenth Judicial Dist., Greeley, for plaintiff-appellant.

Bruno, Bruno & Colin, P.C., Marc F. Colin, Marjorie D. Elder, Denver, for defendant-appellee.

Justice SCOTT delivered the Opinion of the Court.

We accepted jurisdiction of this matter [1] to decide whether the district court erred when

---

1. We accepted jurisdiction over this matter pursuant to § 13–4–109, 6A C.R.S. (1987), which provides that the court of appeals, prior to determination, may certify a case pending before it to

it ruled that the Chief Judge of the Eighth Judicial District lacks the authority, absent supreme court approval, to issue a standing order prohibiting the unauthorized possession of a deadly weapon or firearm within the district court area of the Larimer County Courthouse. The People, appellants here, appealed the district court's order vacating a contempt citation and discharging the order to show cause issued to Michael Swihart (the "appellee"). Because we find that a chief judge of a judicial district has the authority to issue and enforce orders for the proper administration of justice, including the power to regulate firearms within the courthouse, and because we find that C.R.C.P. 121 is not applicable here, we conclude that the use of the standing order by the chief judge is valid. Accordingly, we reverse and remand with directions.

## I

On September 2, 1993, the Chief Judge of the Eighth Judicial District issued Standing Order 93–2,[2] prohibiting all persons, including law enforcement officers acting within the performance of their duties, from carrying any firearm or deadly weapon on the second floor of the Larimer County Courthouse located in Fort Collins, Colorado. On or prior to September 3, 1993, Standing Order 93–2 had not been submitted to or approved by the supreme court.

On September 2, 1993, appellee, a uniformed police officer with the Fort Collins Police Department, appeared pursuant to a subpoena requiring his testimony in proceedings before the Larimer County District Court. Appellee entered the secured area of the second floor of the Larimer County Courthouse in possession of a firearm. When asked to surrender his firearm in compliance with Standing Order 93–2, appellee refused to do so even though he was aware of the existence and proscriptions of Standing Order 93–2. A security officer then told the appellee to either surrender his firearm or leave the courtroom. At that time and without incident, appellee left the courtroom.

On November 3, 1993, the appellee was ordered to show cause why he should not be held in contempt for violating Standing Order 93–2.[3] After retaining counsel, appellee filed a motion to disqualify Chief Judge John David Sullivan which was granted. Because "all four district judges voted to prohibit firearms and other weapons," Judge Sullivan's order effectively recused all the judges of the Larimer County District Court. After the appointment of a senior judge to preside over the district court contempt proceedings, appellee filed a motion to vacate the contempt citation.

On December 17, 1993, after a hearing, the district court granted appellee's motion to vacate and discharged the show cause order on the grounds that Standing Order 93–2 was null and void as having been issued (1) in excess of the authority of the chief judge, and (2) without supreme court approval pursuant to C.R.C.P. 121 and Chief Justice Directive 85–01, "Authority and Responsibility of Chief Judges" (CJD 85–01). In so ruling, the district court opined that "a chief judge doesn't have the authority, by himself or herself, to issue an order such as Standing Order 93–2."

The People subsequently appealed the district court's ruling to the court of appeals. On certification by that court, we accepted jurisdiction.

the supreme court for consideration. As contemplated by the statute, we may accept the case or remand and return it to the court of appeals for final determination.

**2.** Standing Order 93–2 provides, in pertinent part, that:

no person shall bring in, possess, or carry any deadly weapon or firearm on the Second Floor of the Larimer County Courthouse, except for assigned Courthouse security personnel.

This Order shall apply to all persons including peace officers who are otherwise authorized to possess and carry firearms while acting within the scope of their official public law enforcement employment, and also to persons with written permits for concealed weapons, except, as stated, assigned Courthouse security personnel.

Any deadly weapons or firearms which are seized within the Larimer County Courthouse, shall be forfeited, destroyed, or otherwise disposed of, upon order of the Court.

**3.** The original citation to show cause was issued on September 3, 1993, and was modified on November 3, 1993.

## II

The district court ruled that since "the chief judge of a judicial district [has] only those powers and duties as authorized by the chief justice," and since CJD 85–01, which delineates the authority and responsibility of chief judges, does not specifically confer upon chief judges the power and authority to promulgate a standing order such as 93–2, the order was not valid. We disagree.

CJD 85–01, promulgated in 1985,[4] delineates the authority of the chief judge of each judicial district as to administrative matters.[5] We find that Standing Order 93–2 was issued as part of the administrative authority of the chief judge.[6]

CJD 85–01 provides in pertinent part: "The Chief Judge is the administrative head of all district and county courts within a district." As such, the chief judge must have the ability to assure that order is maintained and to control security as it relates to the district court courtrooms. The chief judge, with the concurrence of the other district judges, issued Standing Order 93–2 to assure the proper functioning of the district court. Moreover, by its terms, the order limited its effect to the second floor of the Larimer County Courthouse, where the district court courtrooms are located and thus the particular location where violence or the threat of violence may interfere with the operation of the courts and pose the greatest threat to the administration of justice.

Thus, Standing Order 93–2 is a valid exercise of Chief Judge Sullivan's administrative authority to ensure that the operation of the district court of the Eighth Judicial District is not thwarted or obstructed by the unauthorized use of firearms.

## III

The district court also ruled that because Standing Order 93–2 was not submitted to this court for approval in accordance with C.R.C.P. 121 and CJD 85–01, it was of no effect.

C.R.C.P. 121 states:

(a) **Repeal of local rules.** All District Court local rules, including local procedures and standing orders having the effect of local rules, enacted before April 1, 1988 are hereby repealed.

(b) **Authority to enact local rules on matters which are strictly local.** Each court by action of a majority of its judges may from time to time propose local rules and amendments of local rules not inconsistent with the Colorado Rules of Civil Procedure or Practice Standards set forth in C.R.C.P. 121(c), nor inconsistent with any directive of the Supreme Court. A proposed rule or amendment shall not be effective until approved by the Supreme Court.

The defendant suggests that the terms "directives," "local rules" and "standing orders" are used interchangeably, and all such actions of a chief judge are subject to the supreme court approval provisions of Rule 121. We disagree.

C.R.C.P. 121(a), by its terms, draws a clear distinction between "standing orders having the effect of local rules" and those which do not. It follows, then, that not all standing orders are local rules. Accordingly, we must determine when standing orders have the effect of local rules.

C.R.C.P. 121 does not mandate that all judicial orders be reviewed by this court.

4. CJD 95–01, promulgated in 1995, now supersedes CJD 85–01.

5. The directive permits chief judges to exercise power over administrative relationships among judges, delegation of responsibility for the day-to-day administrative operations of the court, appointment of an acting chief judge, proposal of local court rules, assignment of judges, judicial schedules and court hours, case assignment and calendaring procedures, requests for judicial assistance, authorization for leave of judges and court employees, reassignment of employees, personnel responsibilities and budget and fiscal responsibilities.

6. Because we resolve this dispute based upon the chief judge's administrative authority existing under CJD 85–01, we need not and do not discuss other sources of authority of a chief judge. Thus, although in *Board of County Commissioners v. Nineteenth Judicial District*, No. 94SC655 (Colo. May 22, 1995), we acknowledged our constitution as the "source" of judicial power, we express no opinion as to the inherent power or authority of judges here.

The purpose of Rule 121 is to provide uniformity among the various district courts of our twenty-two judicial districts as to procedural matters.[7] Absent such uniformity, there is significant risk that lawyers and litigants will be subjected to a patchwork of rules establishing many different practices, potentially resulting in surprise or unanticipated local process when appearing in different districts. Thus, consistent with the goal of uniformity in court procedures and the rule's plain language, we find that only those standing orders which address procedural matters involving the actual dispute before the court have the effect of local rules. We conclude that Rule 121 contemplates supreme court approval only for standing orders which affect the procedural rights of litigants before the court.

Seeking affirmance, appellee relies primarily on *Walsmith v. Lilly*, 194 Colo. 270, 571 P.2d 1107 (1977), and *Halliburton v. County Court*, 672 P.2d 1006 (Colo.1983), for his assertion that the standing order has no effect absent supreme court approval. The "rules" in *Walsmith* and *Halliburton*, however, involved the type of procedural matter contemplated by Rule 121. *Halliburton* and *Walsmith* both involved a Denver District Court "directive or local court rule" which authorized the court to order a change of venue on its own motion in certain situations. This court found such rules of court to be justified, but subject to the requirements of C.R.C.P. 83 (now C.R.C.P. 121). *See Halliburton*, 672 P.2d at 1010 n. 3; *Walsmith*, 194 Colo. at 272, 571 P.2d at 1109. Orders regarding venue requirements clearly come within the purview of Rule 121, as they affect the procedural rights of litigants before the court.

Conversely, Standing Order 93–2 does not involve standards for practice in different courtrooms, thus it does not affect the procedural rights of litigants. Rather, it involves specific security concerns of all the judges of the district court as to persons who visit the Larimer County Courthouse, matters of an administrative nature. We need not pass upon every order issued by a chief judge regarding administrative matters which do not affect the rights of parties in disputes before the court. Thus, since Standing Order 93–2 does not "have the effect of local rules," as contemplated by Rule 121, Rule 121 does not apply here.

■ Similarly, CJD 85–01 does not require that Standing Order 93–2 be submitted to this court for approval. CJD 85–01 requires:

> Local rules of practice and procedure must be approved by the Supreme Court. Proposed local rules are to be submitted to the Supreme Court by the Chief Judge through the office of the state court administrator. Proposed rules for the Denver County, Juvenile, Probate and Superior courts shall be submitted by their respective presiding judges in the same manner.

Because CJD 85–01 specifically excludes from its reach orders that, in effect, are not "[l]ocal rules of practice and procedure," Standing Order 93–2 need not be submitted to this court for approval pursuant to CJD 85–01.[8]

---

**7.** *See* Rule 121 § 1–1 (committee comment) ("This standard was necessary because there was no uniformity among the counties."); Rule 121 § 1–3 (committee comment) ("This Practice Standard is designed to make handling of collection of jury fees uniform throughout the state."); Rule 121 § 1–5 (committee comment) ("This Practice Standard was made necessary by lack of uniformity throughout the districts concerning access to court files."); Rule 121 § 1–15 (committee comment) ("This Practice Standard was necessary because of lack of uniformity among the districts concerning how motions were to be made, set and determined."); Rule 121 § 1–18 (committee comment) ("This Practice Standard ... attempts to make procedures reasonably uniform."); Rule 121 § 1–19 (committee comment) ("This standard makes preparation and timing of submission of jury instructions uniform throughout the state."); Rule 121 § 1–21 (committee comment) ("This Practice Standard sets forth uniform requirements for obtaining, paying for, certification and removal of court reported transcripts.").

**8.** We note that it is of no import that several other district courts have included in their local rules of procedure prohibitions regarding firearms. Just because other jurisdictions have sought and received supreme court approval for local rules prohibiting firearms does not mean that all orders regarding firearms must be approved by this court to have effect.

Accordingly, we conclude that Rule 121 and CJD 85–01 do not stand as a bar to the validity of Standing Order 93–2.

## IV

In sum, pursuant to CJD 85–01, a chief judge may issue orders of an administrative nature to assure that the district court is able to reasonably perform its judicial functions. The chief judge issued Standing Order 93–2 to assure the security of the Larimer County District Court so that its district judges can administer justice in an orderly and dignified atmosphere. Moreover, because Standing Order 93–2 does not have the effect of a local rule, C.R.C.P. 121 does not mandate prior approval by the supreme court. Therefore, the order was a valid and proper exercise of the chief judge's administrative authority.

Accordingly, we reverse the district court's ruling and remand this case to the district court with directions that it reinstate the contempt citation and the order to show cause.

LOHR, J., dissents, and KIRSHBAUM, J., joins in the dissent.

### Justice LOHR dissenting:

The majority holds that the Chief Judge of the Eighth Judicial District had the authority, without approval from the Colorado Supreme Court, to issue a standing order, number 93–2, prohibiting the unauthorized possession of a deadly weapon or firearm on the second floor of the Larimer County Courthouse. The majority therefore reverses the order of the Larimer County District Court holding the standing order invalid in a contempt of court proceeding based upon violation of the order and directs that the contempt citation be reinstated. I respectfully dissent.

The majority reasons that because Chief Justice Directive 85–01 (CJD 85–01) designates a chief judge as the " 'administrative head of all district and county courts within a district,' " a chief judge by implication possesses the unreviewable authority "to assure that order is maintained and to control security as it relates to the district court courtrooms." Maj. op. at 824, quoting CJD 85–01.

In reaching its conclusion that Standing Order 93–2 reflects a valid exercise of Chief Judge Sullivan's administrative authority, the majority does not identify with any precision the source of authority for chief judges to issue orders such as the one at issue here today. In my opinion, Article VI, section 5(4), of the Colorado Constitution and CJD 85–01 constitute the only sources of authority for administrative actions taken by chief judges of district courts throughout the state. Moreover, CJD 85–01 provides this court with the power to ensure that actions taken by chief judges are uniform and consistent throughout the state and that differences in local rules of practice and procedure are limited to those truly necessitated by local conditions.

Article VI, section 5, of the Colorado Constitution pertains generally to the personnel of the Colorado Supreme Court; the authority of this court to appoint a chief justice, a state court administrator, and other necessary personnel; and the appointment of chief judges for each judicial district. Section 5(4) specifically provides as follows:

> The chief justice [of the supreme court] shall appoint from the district judges of each judicial district a chief judge to serve at the pleasure of the chief justice. A chief judge shall receive no additional salary by reason of holding such position. *Each chief judge shall have and exercise such administrative powers over all judges of all courts within his district as may be delegated to him by the chief justice.*

(Emphasis added). Thus, the office of chief judge is created by the state constitution and a chief judge's power is derived from those powers expressly delegated to a chief judge by the chief justice of the state supreme court.

Consistent with the constitutional mandate of section 5(4), the chief justice of this court issued CJD 85–01. CJD 85–01, entitled "Authority and Responsibility of Chief Judges," enumerates in great detail the authority of a chief judge over such matters as the judicial district's budget, personnel responsibilities concerning all court employees, and case as-

signment and calendaring procedures.[1] CJD 85–01 specifically provides for the adoption of local court rules in section number four of that directive:

### 4. *Local Court Rules*

Local rules of practice and procedure *must be approved by the Supreme Court.* Proposed local court rules are to be submitted to the Supreme Court by the chief judge through the office of the state court administrator. Proposed rules for the Denver County, Juvenile, Probate and Superior courts shall be submitted by their respective presiding judges in the same manner.

(Emphasis added). Although not spelling out in detail what rules may properly be adopted, CJD 85–01 specifically requires that all proposed local rules be approved by this court.

The majority fails to give effect to this requirement and concludes instead that CJD 85–01 implicitly confers the authority on chief judges to issue unreviewable "administrative" standing orders such as the one at issue here. Nothing in section 5(4) of our state constitution or in the language of CJD 85–01 supports the majority's conclusion that chief judges possess certain implied unreviewable administrative powers in addition to the enumerated administrative powers conferred by that directive. Additionally, I would construe "[l]ocal rules of practice and procedure," as referred to in paragraph 4 of CJD 85–01, to include all matters governing the interrelation of the courts and the public which the courts are created to serve, with the result that general rules concerning court security measures are subject to the approval of this court under the express terms of that directive.

C.R.C.P. 121 also requires that all proposed local rules, "including local procedures and standing orders having the effect of local rules," be submitted to this court for review and approval. Effective April 1, 1988, this court repealed all district court local rules and adopted C.R.C.P. 121. Pursuant to C.R.C.P. 121(b), judicial districts may now submit to this court for review and approval proposed "local rules" that are "not inconsistent with the Colorado Rules of Civil Procedure or Practice Standards set forth in C.R.C.P. 121(c), *nor inconsistent with any directive of the Supreme Court.*" (Emphasis added). Additionally, C.R.C.P. 121(c), sections 1–1 to 1–25, enumerates "District Court Practice Standards" designed to ensure consistency in standards governing practice throughout the state.

In addressing C.R.C.P. 121, the majority gives a crabbed scope to the term "local rules," limiting such rules and "standing orders having the effect of local rules" to "procedural matters involving the actual dispute before the court." *See* C.R.C.P. 121(b) and maj. op. at 825. In addition, the majority quotes extensively from committee comments to *practice standards* authorized by C.R.C.P. 121(c) in an effort to bolster its argument that C.R.C.P. 121 in its entirety is strictly limited to governance of litigation brought before the court. Maj. op. at 825 n. 7.

The majority's reading of C.R.C.P. 121 is too narrow and overlooks the fact that subsequent to the adoption of C.R.C.P. 121, numerous judicial districts have sought and received approval from this court for various local rules that are not strictly limited to the conduct of litigation. This approval was necessary in light of the requirement of C.R.C.P. 121(b) that *all* "local rules" must be consistent with any directive of the Supreme Court and the requirement of CJD 85–01 that all such rules be approved by this court. Thus, following the adoption of C.R.C.P. 121 in 1988, chief judges sought and received this court's approval for local rules governing matters not specified in C.R.C.P. 121(c), sections 1–1 to 1–25, such as the terms of the court, court hours, use of the law library, access to and use of court files, and regulation of firearms and weapons. *See Colorado Local Court Rules,* General Local Rules of the District Courts of the Second Judicial District, Sixth Judicial District, Seventh Judicial District, Ninth Judicial District, Tenth Judicial District, Fourteenth Judicial District, Nineteenth Judicial District and Twentieth Judicial District. The majority alter-

---

1. *See* maj. op. at 824 n. 5.

nately overlooks and inappropriately dismisses this court's consistent practice of reviewing proposed local rules that go beyond concerns strictly relating to litigated cases. *See* maj. op. at 825 ("we need not pass upon every order issued by a chief judge regarding administrative matters which do not affect the rights of parties in disputes before the court"); maj. op. at 825 n. 8 ("It must be noted that it is of no import that several other district courts have included in their local rules of procedure prohibitions regarding firearms. Just because other jurisdictions have sought and received supreme court approval for local rules prohibiting firearms does not mean that all orders regarding firearms must be approved by this court to have effect".)

The requirement that chief judges seek supreme court approval for proposed rules of practice and procedure stems from the overriding need for uniformity and consistency of such practices in courts throughout the state. Taken together, CJD 85–01 and C.R.C.P. 121 act as a check on the delegated powers of chief judges to ensure that one judicial district does not adopt, for example, more stringent or oppressive techniques for searching persons seeking access to courtrooms and court administrative offices than are conducted in neighboring judicial districts, or adopt different rules of procedure than are required in other districts. Consistency in practice and procedure throughout the judicial districts of this state lessens the "risk that lawyers and litigants will be subjected to a patchwork of rules establishing many different practices, potentially resulting in surprise or unanticipated local process when appearing in different districts." Maj. op. at 825. This pronouncement is no less applicable to administrative rules such as the one at issue here today than it is to procedural rules.

It is noteworthy that the local rules approved by this court with respect to firearms and weapons have been essentially uniform.

Rule 9 of the Rules of the District Court of the Second Judicial District is typical:

(a) No person, except an authorized law enforcement officer shall bring a firearm or weapon into the court building.

(b) No person, except a court security officer in the performance of his or her official duties shall bring a firearm or weapon into any courtroom, hearing room, chambers or clerk's office without prior approval of the court.[2]

The standing order at issue in this case, however, is more restrictive. It prohibits all persons, including peace officers, from possessing a deadly weapon or firearm on an entire floor of a courthouse and provides for seizure and destruction of weapons, presumably those confiscated for violation of the terms of the standing order. *See* maj. op. at 823 n. 2. Nothing in CJD 85–01, either explicitly or implicitly, provides a chief judge with the authority to confiscate private property or to destroy firearms. Depriving a law enforcement officer of the ability to carry a weapon while engaged in performance of official duties presents a sensitive issue implicating important policy concerns deserving of this court's attention. There is no assurance that the special provisions set forth in the standing order at issue here are necessitated by unusual local conditions.

Article VI, section 5(4), of the Colorado Constitution, together with the chief justice's directives, provide the source and prescribe the scope of the authority to be exercised by the chief judges of our individual judicial districts. Furthermore, both CJD 85–01 and C.R.C.P. 121 require this court's approval for all proposed local rules. Therefore, because the chief judge must receive this court's approval for the firearms ban set forth in his standing order, I would affirm the order of the district court ruling that the chief judge lacked the unilateral authority to issue the standing order banning firearms and vacating the order to show cause why the officer

---

**2.** Only Rule 9 of the Rules of the District Court of the Fourteenth Judicial District differs from the firearms and weapons regulation in effect in six other judicial districts. The Fourteenth Judicial District's local firearms rule provides as follows:

No person shall be allowed in any court facility of the Fourteenth Judicial District with a firearm or weapon of any kind. The sole exception shall be for law enforcement officers, and then only during the performance of their official duties.

who allegedly violated the order should not be held in contempt. Accordingly, I respectfully dissent.

KIRSHBAUM, J., joins in this dissent.