724

[No. 67454-0. En Banc.]
Argued September 14, 1999. Decided January 13, 2000.
THE STATE OF WASHINGTON, *Appellant*, v. DENNIS L. WADSWORTH, *Respondent*.

*Russell D. Hauge, Prosecuting Attorney*, and *Jeffrey Jay Jahns* and *Pamela B. Loginsky, Deputies*, for appellant.

*Ramona C. Brandes* of *Ronald D. Ness & Associates*, for respondent.

SMITH, J. — Appellant State of Washington seeks direct review of a decision of the Kitsap County District Court which dismissed with prejudice a charge against Respondent Dennis L. Wadsworth for unlawful possession of a weapon in violation of RCW 9.41.300(1) by attempting to take a knife into the Kitsap County Courthouse. The District Court reasoned the Legislature, by enacting RCW 9.41.300(1)(b), unconstitutionally delegated to "local judicial authority" the power to designate the areas in court buildings where possession of a weapon is unlawful. We granted review. We reverse.

## QUESTION PRESENTED

The question presented in this case is whether the

Legislature may constitutionally delegate to "local judicial authority" under RCW 9.41.300 the responsibility for designating and marking areas in buildings used for court proceedings in which possession of a weapon is prohibited under the statute.

## STATEMENT OF FACTS

This case comes before the court on stipulated facts,[1] including a stipulation on the legislative history of RCW 9.41.300.[2]

In the 1993 legislative session, House Bill ESHB 1059 was introduced to revise provisions relating to prohibition of weapons in restricted areas of court facilities used in connection with court proceedings.[3] The bill passed the House.[4] After the Senate proposed three amendments,[5] the House and Senate conferees agreed on them.[6] Both houses passed House Bill ESHB 1059 which was codified as RCW 9.41.300.

The statute as amended includes a provision that "[t]he local judicial authority shall designate and clearly mark those areas where weapons are prohibited, and shall post notices at each entrance to the building of the prohibition

---

[1]The parties filed stipulations on April 13, 1998 and October 12, 1998. Clerk's Papers at 31-104, 144-45.

[2]*Id.* at 53-76.

[3]*Id.* at 55-59.

[4]*Id.*

[5]The amendments proposed by the Senate to House Bill ESHB 1059 were: "The locked box provided by the local legislative authority must be stationary; The local legislative authority is liable for any negligence causing damage to or loss of a weapon placed in a locked box or left with a designated official; [and] The judicial authority is required to designate and mark the restricted areas of the building. *Id.* at 76. (Final Bill Report, ESHB 1059).

[6]The Final Bill Report of ESHB 1059 indicates that "[i]n response to increasingly frequent reports of violent incidents in court facilities, . . . all dangerous weapons should be banned from all areas used in connection with court proceedings." *Id.* at 75.

against weapons in the restricted areas[.]"[7] These duties were assigned to the "local judicial authority" instead of to the "local legislative authority"[8] at the request of the Office of the Administrator for the Courts.[9]

On August 25, 1995, in response to the legislative directive under RCW 9.41.300, the Kitsap County Superior Court adopted Resolution 82295[10] which determined that, based upon the configuration of the Kitsap County Courthouse,[11] "it is not possible to protect court related areas in the Kitsap County courthouse and the Kitsap County Youth Service Facility without prohibiting weapons from the entire building."[12] A copy of the resolution is kept in a binder at each entrance to the Kitsap County Courthouse and is made available to the public by court security personnel upon request.[13] Located near both public entrances to the Kitsap County Courthouse are signs notifying the public that weapons are prohibited in the building.[14]

Effective September 5, 1995, all persons entering the Kitsap County Courthouse are required to pass through a

---

[7]RCW 9.41.300(1)(b).

[8]Prior to the amendment House Bill ESHB 1059 provided that "the *local legislative authority* must designate and clearly mark areas in court facilities where weapons are prohibited, and must post notices at each entrance to the court facility that weapons are prohibited in the restricted areas." Clerk's Papers at 76 (emphasis added).

[9]*Id.* at 58

[10]*Id.* at 49-51.

[11]The parties stipulated to a schematic diagram of the first and second floors of the Kitsap County Courthouse located at 614 Division Street in Port Orchard, Washington. *Id.* at 46-47.

[12]*Id.* at 49-51. As some of the reasons for the ban of weapons from the entire Kitsap County Courthouse and the Kitsap County Youth Services Facility, Resolution 82295 refers to the free flow of jurors, witnesses, victims, defendants and court-related personnel through the hallways of the two-story courthouse; the extensive use of stairwells; and the location of permanent courtrooms on the second floor and temporary courtrooms on the first floor near elevators.

[13]*Id.* at 32.

[14]*Id.*

metal detector.[15] All purses, packages, bags and other carry items are required to pass through an X-ray machine.[16] The X-ray machines and metal detectors are operated by court security personnel.[17] Any person who refuses to comply with these security requirements is prohibited from entering the Kitsap County Courthouse.[18] Any weapon, even though lawful to possess, discovered in the possession of any person attempting to enter the Kitsap County Courthouse is taken, logged in and stored in a cabinet and returned when the person leaves the building.[19]

On July 10, 1997, Respondent Dennis L. Wadsworth attempted to enter the front public entrance to the Kitsap County Courthouse.[20] As the small black bag he was carrying passed through the X-ray machine, court security officers observed a Swiss Army style pocketknife with a two-inch blade.[21] A security officer explained to Respondent that the knife was not permitted inside the courthouse and that Respondent had the option of allowing court security to store the knife until he left the building; or returning the knife to his vehicle; or not entering the courthouse at all.[22]

Respondent maintained he had a right to possess the knife inside the courthouse.[23] Court security officers warned him he would be charged with a crime if he attempted to

---

[15]*Id.* at 33.

[16]*Id.*

[17]*Id.*

[18]*Id.*

[19]The 1996 annual report of the Kitsap County Court Security office stated that approximately 9,402 knives, 824 containers of pepper spray, and 118 firearms were intercepted at the entrance of the Kitsap County Courthouse. In contrast, the 1997 report indicated interception of 725 knives, 66 containers of pepper spray, and 12 firearms. *Id.* at 33, 99-100.

[20]*Id.* at 34-35.

[21]*Id.* at 35.

[22]*Id.*

[23]*Id.*

enter the courthouse while in possession of the knife.[24] At his request, court security officers provided Respondent an opportunity to review RCW 9.41.300 and RCW 9.41.250.[25] After reviewing the statutes, Respondent attempted to step around the court security officer while still carrying his black bag containing the knife.[26] The security officer stopped Respondent and escorted him to the Office of the Kitsap County Sheriff located adjacent to the courthouse.[27] Respondent was then cited for criminal trespass in the first degree in violation of RCW 9A.52.070(1) and making a false or misleading statement to a public servant in violation of RCW 9A.76.175.[28]

Respondent Wadsworth on July 10, 1997 attempted a second time to enter the courthouse with his black bag.[29] His bag was run through the X-ray machine.[30] Court security officers observed another pocketknife in the bag.[31] Respondent denied having a knife in the bag.[32] A search of the bag by court security officers confirmed a Swiss Army type knife with a red handle in the bag.[33] Respondent then permitted the knife to be stored by court security officers

---

[24]*Id.*

[25]Respondent Wadsworth asserts he was shown a copy of only RCW 9.41.250 and not shown a copy of Kitsap County Superior Court Resolution 82295. Court security officers assert Respondent was shown a copy of both RCW 9.41.300 and RCW 9.41.250. *Id.*

[26]*Id.*

[27]*Id.* at 35-36.

[28]Respondent Wadsworth was released and escorted from the courthouse by court security officers. *Id.* at 36.

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Id.*

while he was inside the courthouse.[34] It was returned to him when he left the building.[35]

On July 10, 1997, Respondent Dennis L. Wadsworth was formally charged with Count I, criminal trespass in the first degree in violation of RCW 9A.52.070(1), and Count II, making a false or misleading statement to a public servant in violation of RCW 9A.76.175.[36] On April 13, 1998, an amended charge of unlawful possession of weapon in certain places under RCW 9.41.300(1)(b) was filed.[37] The amended complaint read:

> Defendant [Dennis L. Wadsworth] did commit the crime of UNLAWFUL POSSESSION OF WEAPON IN CERTAIN PLACES as follows—
>
> On or about the 10 day of July, 1997, in the County of Kitsap, State of Washington, the above-named Defendant, who knowingly possessed or knowingly had under his or her control a weapon, did enter those areas in any building which are used in connection with court proceedings, including courtrooms, jury rooms, judge's chambers, offices and areas used to conduct court business, waiting areas, and corridors adjacent to areas used in connection with court proceedings; contrary to Revised Code of Washington 9.41.300(1)(b).
>
> (MAXIMUM PENALTY—One(1)year in jail or $5,000.00 fine, or both, pursuant to RCW 9.41.300(10) and RCW 9.92.020, plus restitution, assessments and court costs.).

On April 13, 1998, the Honorable James M. Riehl, Kitsap County District Court, granted an order of dismissal of Counts I and II in the original complaint.[38] Additionally,

---

[34]*Id.*

[35]Respondent Wadsworth claims he suffers from diabetes and carries medical supplies, including insulin, in the small black bag. He self-administers insulin by syringe injection and claims he uses a knife to cut the used syringe in half. Court security officers were not made aware of this on July 10, 1997. *Id.* at 36-37.

[36]*Id.* at 1-2.

[37]*Id.* at 105.

[38]*Id.* at 106.

the parties entered into a stipulation regarding certain facts.[39]

Respondent Wadsworth, relying upon the facts stated in the stipulation, filed several motions to dismiss the charge against him.[40] On November 5, 1998, Judge Riehl granted Respondent's motion to dismiss,[41] concluding that RCW 9.41.300(1)(b) is an unconstitutional delegation of legislative power to the judiciary in violation of the separation of powers doctrine.[42]

On November 30, 1998, the State under RAP 4.3 filed a timely notice for direct review to this court.[43] Judge Riehl signed a RAP 4.3 statement in support of direct review which included the statement that:

---

[39]On April 13, 1998, Respondent Wadsworth and the State entered into a stipulation of facts concerning (1) the incident forming the basis of this action (Clerk's Papers at 31-44); (2) a schematic diagram of the first and second floors of the Kitsap County Courthouse (Clerk's Papers at 46-47); (3) the location of signs notifying the public of the prohibition of weapons in the courthouse (Clerk's Papers at 31-32); (4) the location of the permanent and temporary courtrooms on the first and second floors of the courthouse (Clerk's Papers at 34); (5) Resolution 82295 of the Kitsap County Superior Court (Clerk's Papers at 49-51); (6) the security measures then in place at the Kitsap County Courthouse and corresponding statistics for the years 1996 and 1997 compiled by courthouse security (Clerk's Papers at 33-37, 99-100); (7) the legislative history of RCW 9.41.300 (Clerk's Papers at 53-76); and (8) the availability of sufficient room at the top of the stairwells on the second floor of the courthouse for installation of metal detectors and X-ray devices (Clerk's Papers at 144-45).

[40]The motions to dismiss made the following assertions: (1) RCW 9.41.300(1)(b) was unconstitutional under the separation of powers doctrine (Clerk's Papers at 107-13); (2) the State cannot establish a prima facie case because the Swiss Army style knife with a two-inch blade does not constitute a weapon (Clerk's Papers at 114-19); and (3) Resolution 82295 of the Kitsap County Superior Court exceeds the statutory authority granted under RCW 9.41.300(1)(b) (Clerk's Papers at 120-23).

[41]In a memorandum decision dated November 30, 1998, Judge Riehl denied Respondent's motion to dismiss for failure by the State to establish a prima facie case and Respondent's motion to dismiss on the grounds that Resolution 82295 of the Kitsap County Superior Court exceeded the statutory authority granted by RCW 9.41.300(1)(b). Clerk's Papers at 150.

[42]The brief order of dismissal on the motion of [Respondent] dated November 5, 1998 was a check-off form dismissing with prejudice with interlined notations "pending further findings and conclusions" and "violates separation of power." *Id.* at 149-59. The court's memorandum decision was filed November 30, 1998. *Id.* at 150-59.

[43]*Id.* at 238-39.

A delay in obtaining a prompt and precedential determination of the above issues could cause significant detriment to the State of Washington and/or the public's interest in having safe access to seek redress through the judicial branch of government and its courtrooms and courthouses.[44]

This court granted review on February 8, 1998.

## DISCUSSION

RCW 9.41.300(1) provides:

**Weapons prohibited in certain places—Local laws and ordinances—Exceptions—Penalty.** (1) It is unlawful for any person to enter the following places when he or she knowingly possesses or knowingly has under his or her control a weapon:

(a) The restricted access areas of a jail, or of a law enforcement facility, or any place used for the confinement of a person (i) arrested for, charged with, or convicted of an offense, (ii) held for extradition or as a material witness, or (iii) otherwise confined pursuant to an order of a court, except an order under chapter 13.32A or 13.34 RCW. Restricted access areas do not include common areas of egress or ingress open to the general public;

(b) Those areas in any building which are used in connection with court proceedings, including courtrooms, jury rooms, judge's chambers, offices and areas used to conduct court business, waiting areas, and corridors adjacent to areas used in connection with court proceedings. The restricted areas do not include common areas of ingress and egress to the building that is used in connection with court proceedings, when it is possible to protect court areas without restricting ingress and egress to the building. The restricted areas shall be the minimum necessary to fulfill the objective of this subsection (1)(b).

In addition, the local legislative authority shall provide either a stationary locked box sufficient in size for pistols and key to a weapon owner for weapon storage, or shall designate an official to receive weapons for safekeeping, during the

---

[44]*Id.* at 236-37.

owner's visit to restricted areas of the building. The locked box or designated official shall be located within the same building used in connection with court proceedings. The local legislative authority shall be liable for any negligence causing damage to or loss of a weapon either placed in a locked box or left with an official during the owner's visit to restricted areas of the building.

*The local judicial authority shall designate and clearly mark those areas where weapons are prohibited, and shall post notices at each entrance to the building of the prohibition against weapons in the restricted areas;*

(c) The restricted access areas of a public mental health facility certified by the department of social and health services for inpatient hospital care and state institutions for the care of the mentally ill, excluding those facilities solely for evaluation and treatment. Restricted access areas do not include common areas of egress and ingress open to the general public; or

(d) That portion of an establishment classified by the state liquor control board as off-limits to persons under twenty-one years of age.[45]

Respondent Wadsworth argues that RCW 9.41.300(1)(b) is an unconstitutional violation of the separation of powers doctrine. He contends that passage of Resolution 82295, "which criminalize[s] a particular conduct which would otherwise be legal," is equivalent to the judiciary defining the elements of a specific crime.[46] Appellant State of Washington responds that RCW 9.41.300(1)(b) does not delegate to the judiciary responsibility for defining a crime with respect to courthouse facilities.[47] District Court Judge Riehl agreed with the assertion by Respondent and stated "RCW 9.41.300(1)(b)'s delegation of a clearly legislative power (to define criminal conduct) to the judiciary is simply too unusual to find that the separation of powers doctrine is satisfied."[48]

---

[45]RCW 9.41.300(1) (emphasis added).

[46]Br. of Resp't at 8.

[47]Br. of Appellant at 14.

[48]Clerk's Papers at 159.

 This case requires interpretation of RCW 9.41-.300(1)(b). Issues of statutory interpretation require de novo review by this court.[49] A statute is presumed to be constitutional and the party challenging the statute has the burden of establishing it is unconstitutional beyond a reasonable doubt.[50] In interpreting a statute the Court must ascertain and give effect to the intent and purpose of the Legislature as expressed in the statute as a whole.[51] If a statute is not ambiguous, its meaning is to be derived from the language of the statute alone.[52]

 It is the function of the Legislature to define the elements of a specific crime.[53] In this case, the Legislature defined the elements of the crime under RCW 9.41.300(1): "It is unlawful for any person to enter the following places [specified in subsection (a), (b), (c) and (d)] when he or she knowingly possesses or knowingly has under his or her control a weapon[.]" The Legislature identified those "places" with specificity.[54] The Legislature also established the penalty[55] for violation of the statute.[56] This court does not ignore clear statutory language and will not strain to

[49]*See Rettkowski v. Department of Ecology*, 128 Wn.2d 508, 514-15, 910 P.2d 462 (1996).

[50]*See Island County v. State*, 135 Wn.2d 141, 146-47, 955 P.2d 377 (1998).

[51]*See Washington State Coalition for the Homeless v. Department of Soc. & Health Servs.*, 133 Wn.2d 894, 904, 949 P.2d 1291 (1997) (citing *Tommy P. v. Board of County Comm'rs*, 97 Wn.2d 385, 391, 645 P.2d 697 (1982)).

[52]*See Washington State Coalition for the Homeless*, 133 Wn.2d at 904 (citing *Geschwind v. Flanagan*, 121 Wn.2d 833, 841, 854 P.2d 1061 (1993)).

[53]*See Hendrix v. City of Seattle*, 76 Wn.2d 142, 155, 456 P.2d 696 (1969), *cert. denied*, 397 U.S. 948 (1970), *overruled on other grounds by McInturf v. Horton*, 85 Wn.2d 704, 707, 538 P.2d 499 (1975) (citing *Morgan v. Devine*, 237 U.S. 632, 35 S. Ct. 712, 59 L. Ed. 1153 (1915); *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 5 L. Ed. 37 (1820).

[54]*See* RCW 9.41.300(1)(a), (b), (c), and (d).

[55]*See* RCW 9.41.300(10): "Any person violating subsection (1) of this section [RCW 9.41.300(1)] is guilty of a gross misdemeanor."

[56]Fixing penalties for criminal offenses is a legislative function, and not a judicial one. *See, e.g., State v. Ammons*, 105 Wn.2d 175, 180, 713 P.2d 719, 718

find an ambiguity where the language of the statute is clear.[57] The Legislature has defined the elements of offenses under RCW 9.41.300(1) in plain and unambiguous language.

Appellant State of Washington asserts the Legislature purposely defined the crime in general terms, and left to the judiciary the task of establishing specifics.[58] It maintains there are other examples of this practice in the Revised Code of Washington.[59] Appellant asks this court to conclude it is not unconstitutional under the separation of powers doctrine for the Legislature to defer to the "local judicial authority" designation of areas of a courthouse to be declared "weapons-free" and placement of signs notifying the public of restrictions.[60]

"The separation of powers doctrine is not specifically enunciated in either the Washington or federal constitutions, but is universally recognized as deriving from the tripartite system of government established in both constitutions. *See, e.g.*, WASH. CONST. arts. II, III, and IV (establishing the legislative department, the executive, and judiciary); U.S. CONST. arts. I, II, and III (defining legislative, executive, and judicial branches); . . . . When separation of powers challenges are raised involving different branches of state government, only the state constitution is implicated. . . . However, this court relies on federal principles regarding the separation of powers doctrine in interpreting and applying the state's separation of powers doctrine. . . ."[61]

---

P.2d 796, *cert. denied*, 479 U.S. 930, 107 S. Ct. 398, 93 L. Ed. 2d 351 (1986); *State v. Freitag*, 127 Wn.2d 141, 144-45, 896 P.2d 1254, 905 P.2d 355 (1995).

[57]*See Geschwind*, 121 Wn.2d at 841.

[58]Br. of Appellant at 16.

[59]*Id.* at 16-19.

[60]*Id.* at 16.

[61]*State v. Blilie*, 132 Wn.2d 484, 489, 939 P.2d 691 (1997). Pertinent portions of WASH. CONST. arts. II, § 1 (amend. 72), and IV, § 1, read:

Appellant State of Washington relies on our decision in *Carrick v. Locke* which states:[62]

> In adjudging the potential damage to one branch of government by the alleged incursion of another, it is helpful to examine both the history of the practice challenged as well as that branch's tolerance of analogous practices. *E.g.*, *Mistretta* [*v. United States*,] 488 U.S. [361,] at 398-401 [109 S. Ct. 647, 102 L. Ed. 2d 714 (1989)] (allowing judicial participation on Sentencing Guidelines Commission based on historical analogues of extrajudicial activity). "Deeply embedded traditional ways of conducting government cannot supplant the Constitution or legislation, but they give meaning to the words of a text or supply them." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610, 96 L. Ed. 1153, 72 S. Ct. 863, 897, 26 A.L.R.2d 1378 (1952) (Frankfurter, J., concurring). Thus, a long history of cooperation between the branches in any given instance tends to militate against finding any separation of powers violation.[63]

Appellant cites statutes relating to "bail-jumping," "protection orders" and "contempt" as examples of the Legislature defining a crime generally and the judiciary providing the specifics.[64]

Under the "bail-jumping" statute, RCW 9A.76.170, it is

---

ARTICLE II.

LEGISLATIVE DEPARTMENT

§ 1 **Legislative Powers, Where Vested.** The legislative authority of the state of Washington shall be vested in the legislature, consisting of a senate and house of representatives, which shall be called the legislature of the state of Washington . . . .

. . . .

ARTICLE IV.

THE JUDICIARY

§ 1 **Judicial Power, Where Vested.** The judicial power of the state shall be vested in a supreme court, superior courts, justices of the peace and such inferior courts as the legislature may provide.

[62]125 Wn.2d 129, 882 P.2d 173 (1994).

[63]*Carrick*, 125 Wn.2d at 136.

[64]Br. of Appellant at 17.

a crime for a person released by a court to fail to appear as directed for the next court proceeding.[65] The court, and not the Legislature, determines the dates for the person to appear in court.[66]

Under statutes relating to "protection orders," the judiciary determines the specific prohibitions against a restrained party which subjects the party to criminal liability.[67] The Legislature has classified violations of protection orders as misdemeanors or felonies. The Legislature specifies the criminal intent necessary for a violation of the orders and also determines when protection orders may be issued. However, the judiciary determines whom the restrained person may or may not contact and what areas are off limits to the restrained person.[68] Criminal liability is based upon violation of the statute and specific prohibitions determined by the courts.[69]

The offense of criminal contempt is defined by the Legislature which has designated the mode of prosecution and available punishment.[70] The Legislature has also broadly defined the elements of the offense as intentional disobedience of any lawful judgment, decree, order or process of court.[71] The judiciary provides specifics of the offense by declaring the acts of disobedience.[72]

---

[65]*See* RCW 9A.76.170.

[66]*State v. Bryant*, 89 Wn. App. 857, 863, 950 P.2d 1004 (1998), *review denied*, 137 Wn.2d 1017 (1999) (court ordered defendant to appear at a December 8, 1994 omnibus hearing).

[67]*See, e.g.*, RCW 10.99.050; RCW 10.99.040; RCW 26.50.060; RCW 26.50.110; RCW 9A.46.080.

[68]*Id.*

[69]*See generally State v. Dejarlais*, 136 Wn.2d 939, 969 P.2d 90 (1998) (burglary conviction based in part on a protection order issued by a judge that limited defendant's ability to contact the victim); *State v. Jackson*, 91 Wn. App. 488, 490, 957 P.2d 1270 (1998) (conviction for a telephone call made in violation of judicial order precluding any contact with victim unless it concerned the scheduling of visitation with defendant's children).

[70]RCW 7.21.040(2) (a) and (5).

[71]RCW 7.21.010(1).

[72]*Id.*

The Legislature has in many instances delegated to the executive branch the discretion to make rules and regulations for implementation of statutes. These have been upheld as constitutional delegations of power.[73] For example, this court in *American Federation of Teachers, Yakima Local 1485 v. Yakima School District No. 7* upheld the constitutionality of an act involving an organization of certificated school district employees who were victorious in an employee election.[74] In that case we concluded the Legislature may grant broad powers to municipal corporations, including school districts, without delineating precise standards and guidelines, so long as those powers relate to local purposes of regulation or administration.[75] We also concluded the Legislature's grant of discretion to make rules and regulations for implementation of the statute was not an unconstitutional delegation of power.[76]

Analogous to the circumstances in this case, the Legislature, after designating the specific "places" where knowing possession of a weapon is unlawful, merely left to the judiciary determination of the area of its protected "place." By granting to local judicial authority the discretion to indicate the portion of the courthouse to be designated weapons-free under RCW 9.41.300(1)(b), the Legislature was

---

[73]*Spokane County v. State*, 136 Wn.2d 663, 670-72, 966 P.2d 314 (1998) (act is not an unconstitutional violation of separation of powers because courts retain final judicial review of resolutions issued by the Public Employment Relations Commission); *State v. Manussier*, 129 Wn.2d 652, 667-69, 921 P.2d 473 (1996) (Initiative 593, the "three strikes law," is a constitutional delegation of the Legislature's authority to alter the sentencing process); *State v. Lewis*, 115 Wn.2d 294, 304-07, 797 P.2d 1141 (1990) (Sentencing Reform Act giving prosecutors discretion in charging decisions does not usurp legislative power to set sentencing ranges and does not violate the separation of powers); *Diversified Inv. Partnership v. Department of Soc. & Health Servs.*, 113 Wn.2d 19, 25, 775 P.2d 947 (1989) (Legislature may delegate administrative power if it defines generally what is to be done, which administrative body is to accomplish specified purposes, and what procedural safeguards are in effect to control arbitrary administrative action); *State v. Lee*, 87 Wn.2d 932, 933, 558 P.2d 236 (1976) (habitual criminal statute is a constitutional delegation of legislative authority to determine appropriate punishment for criminal violations).

[74]74 Wn.2d 865, 870, 447 P.2d 593 (1968).

[75]*Id.*

[76]*Id.*

acknowledging the appropriateness of this essentially administrative function and inherent power of the courts to assure a safe place for conduct of court functions.[77]

Appellant asserts the judicial branch is primarily responsible for administration of courthouse security.[78] Relying on *Carrick v. Locke*,[79] Appellant states two main concerns in separation of powers challenges to judicial action.[80] First, the judicial branch must neither be assigned nor allowed tasks that are more properly accomplished by other branches; and second, no provision of law may impermissibly threaten the institutional integrity of the judicial branch.[81] Respondent Wadsworth, to the contrary, contends RCW 9.41.300(1)(b) violates the institutional integrity of the judicial system.[82]

Citing the decision of this court in *State v. Hartzog*,[83] Appellant asserts that "an integral part of any court's duty to administer justice and fairly adjudicate disputes is to ensure that all parties have the opportunity to advance their cause in an atmosphere of safety, decorum, and fairness."[84] In *Hartzog* we stated "[i]t is fundamental that a trial court is vested with the discretion to provide for courtroom security, in order to ensure the safety of court

---

[77]We note that Congress has deferred to the courts in matters relating to possession of weapons in Federal courthouses. Under 18 U.S.C. § 930(f), Congress criminalized possession of a firearm or other dangerous weapons in federal court facilities and stated that:

> Nothing in this section limits the power of a court of the United States to punish for contempt or to promulgate rules or orders regulating, restricting, or prohibiting the possession of weapons within any building housing such court or any of its proceedings, or upon any grounds appurtenant to such building.

[78]Br. of Appellant at 9.

[79]125 Wn.2d 129, 882 P.2d 173 (1994).

[80]Br. of Appellant at 10.

[81]*Carrick*, 125 Wn.2d at 136.

[82]Br. of Resp't at 8-9.

[83]96 Wn.2d 383, 635 P.2d 694 (1981).

[84]Br. of Appellant at 11.

officers, parties, and the public."[85] In that case we concluded it is within the "inherent power" and discretion of a trial court to impose additional security measures to provide for the safety of the public and persons in attendance upon the courts.[86] The Appellant also relies on several cases decided by the Supreme Courts of Colorado,[87] New Hampshire,[88] and West Virginia[89] to establish the authority of the judiciary in the matter of courthouse security.[90] We find the cases interesting, but they are of no precedential value.

This court has recognized the inherent power and obligation of the judiciary to control all its necessary functions to promote the effective administration of justice.[91] We have stated that the inherent powers of the courts are neither derived from nor dependent upon express constitutional authority, but the courts are empowered to do all that is reasonably necessary for the efficient administration of

---

[85]*Hartzog*, 96 Wn.2d at 396 (requirement of a courtroom's security order that a maximum-security defendant submit to another body cavity search before appearing in court was justifiable to allow the court to maintain order and decorum).

[86]*Id.* at 401.

[87]*Board of County Comm'rs v. Nineteenth Judicial Dist.*, 895 P.2d 545 (Colo. 1995) (courts have the inherent authority to order the sheriff to provide security measures for a courthouse such as metal detectors, security checkpoints, and guards).

[88]*Petition of Mone*, 143 N.H. 128, 719 A.2d 626 (1998) (law requiring the county sheriff departments instead of the court-supervised bailiffs to provide courthouse security violated the separation of powers); *State v. LaFrance*, 124 N.H. 171, 471 A.2d 340 (1983) (statute allowing law enforcement officers to wear firearms in any courtroom in the state was struck down on separation of powers grounds).

[89]*State ex rel. Farley v. Spaulding*, 203 W. Va. 275, 507 S.E.2d 376 (1998) (court recognized that the judiciary had the inherent power to designate and authorize persons to perform security services necessary to the safe and efficient operation of the county judiciary).

[90]Br. of Appellant at 11-13.

[91]*Zylstra v. Piva*, 85 Wn.2d 743, 748-50, 539 P.2d 823 (1975). *See Washington State Motorcycle Dealers Ass'n v. State*, 111 Wn.2d 667, 674-75, 763 P.2d 442 (1988); *Washington State Bar Ass'n v. State*, 125 Wn.2d 901, 908-09, 890 P.2d 1047 (1995).

justice.[92] This court has relied upon the inherent powers doctrine in a variety of circumstances: to grant bail;[93] to compel the production of evidence and attendance of witnesses;[94] to prescribe rules for granting of bail on appeal;[95] to regulate the practice of law;[96] and to adopt procedural rules for operation of the courts.[97] Supreme Courts in other jurisdictions have also relied upon the inherent powers doctrine as the basis for resolving issues concerning courthouse security[98] and the general administration of court facilities.[99]

██ █ Under the inherent powers of the courts, the judiciary has authority to administer justice and to ensure the safety of court personnel, litigants and the public. In this case, Respondent Wadsworth claims the Legislature did not provide procedural safeguards against arbitrary action by the local judicial authority.[100] Although RCW 9.41.300 does not direct the local judicial authority to use any particular device such as a resolution or court rule in fulfilling its responsibility under the statute, Respondent claims the

---

[92]*In re Juvenile Dir.*, 87 Wn.2d 232, 245-50, 552 P.2d 163 (1976). *See also Ordell v. Gaddis*, 99 Wn.2d 409, 411, 662 P.2d 49 (1983) (The inherent power of Superior courts to appoint pro tem commissioners is based upon the efficient administration of justice).

[93]*See State ex rel. Syverson v. Foster*, 84 Wash. 58, 146 P. 169 (1915).

[94]*See State ex rel. Haugland v. Smythe*, 25 Wn.2d 161, 169 P.2d 706, 165 A.L.R. 1295 (1946).

[95]*See State v. Smith*, 84 Wn.2d 498, 502, 527 P.2d 674 (1974).

[96]*See State v. Cook*, 84 Wn.2d 342, 525 P.2d 761 (1974).

[97]*See State v. Edwards*, 94 Wn.2d 208, 212, 616 P.2d 620 (1980).

[98]*Williams v. State*, 690 N.E.2d 162 (Ind. 1997); *People ex rel. Sullivan v. Swihart*, 897 P.2d 822 (Colo. 1995); *State v. Shelton*, 270 S.C. 577, 243 S.E.2d 455 (1978).

[99]*State ex rel. Lambert v. Stephens*, 200 W. Va. 802, 490 S.E.2d 891 (1997); *County of Barnstable v. Commonwealth*, 422 Mass. 33, 661 N.E.2d 47 (1996); *State ex rel. Frazier v. Meadows*, 193 W. Va. 20, 454 S.E.2d 65 (1994); *In re Alamance County Court Facilities*, 329 N.C. 84, 405 S.E.2d 125 (1991); *O'Coin's, Inc. v. Treasurer of Worcester County*, 362 Mass. 507, 287 N.E.2d 608 (1972); *Judges for the Third Judicial Circuit v. County of Wayne*, 386 Mich. 1, 190 N.W.2d 228, 59 A.L.R.3D 548 (1971).

[100]Br. of Resp't at 15.

separation of powers is violated nonetheless. Respondent asserts the judges who passed Resolution 82295 are tainted because they may be called upon to render judgment against a defendant charged with violation of the resolution.[101] Respondent concludes the "local legislative body" in each municipality is a more appropriate forum for determining courthouse security.[102] He also contends the Superior Court should have held public hearings before adopting the resolution. He cites no reliable authority for these conclusions. The Kitsap County Superior Court judges who unanimously approved Resolution 82295 concluded that:

> RCW 9.41.300(1) is clear that reasonable restrictions may be placed on a citizen's ability to bring weapons into court areas. Given the layout of the Kitsap County Courthouse, it is not possible to protect court areas used in connection with court proceedings without restricting ingress and egress to the entire building. The weapons restricted area, in this case the entire Kitsap County Courthouse, is the minimum restricted area necessary to fulfill the objectives of the statute.[103]

The Superior Court judges selected the resolution as the means for implementing RCW 9.41.300. Under the inherent powers of the courts, judges may issue orders that are "necessary and reasonable."[104] Resolution 82295 of the Kitsap County Superior Court is tantamount to an order of that court and is a valid exercise of the powers of the court.

## SUMMARY AND CONCLUSIONS

A party challenging the constitutionality of a statute bears the burden of proving it is unconstitutional beyond a reasonable doubt.

In determining whether RCW 9.41.300(1) constitutionally delegated to the local judicial authority the power to

---

[101]*Id.* at 9.

[102]*Id.* at 12.

[103]Clerk's Papers at 155.

[104]*In re Juvenile Dir.*, 87 Wn.2d at 245-50.

designate the areas in court buildings where possession of a weapon is unlawful, we first look to the statute. Under the plain language of the statute indicating the legislative intent that the local judicial authority designate and clearly mark those areas where weapons are prohibited and post notices at each entrance to the building of the prohibition against weapons in the restricted areas, we conclude that Resolution 82295 meets this requirement.

Respondent Wadsworth has not met his burden in establishing that RCW 9.41.300(1) is an unconstitutional violation of the separation of powers. He has not established that the Legislature improperly delegated to the judiciary the authority to define an element of the crime. The Legislature has an established practice of defining prohibited acts in general terms, leaving to the judicial and executive branches the task of establishing specifics. Respondent cites no evidence or case law to support his assertion that Resolution 82295 is invalid because it exceeds the scope of statutory authority under RCW 9.41.300. Nor does he show that the Legislature should have established procedural safeguards to protect against arbitrary action by the local judicial authority.

The statute, RCW 9.41.300, satisfies the constitutional separation of powers requirement. Based upon the inherent powers of the court to administer justice and provide for courthouse security to ensure the safety of court personnel, parties and the public, Resolution 82295 is a valid exercise of that authority.

We reverse the decision of the Kitsap County District Court which ruled RCW 9.41.300(1) unconstitutional as a violation of the separation of powers doctrine and dismissed with prejudice the charge against Respondent Dennis L. Wadsworth of attempting to take a knife into the Kitsap County Courthouse in violation of the statute.

Guy, C.J., Johnson, Madsen, Talmadge, and Ireland, JJ., and Sweeney, J. Pro Tem., concur.

Alexander, J. (dissenting) — I would affirm the Kitsap

County District Court because I agree with the experienced judge of that court, the Honorable James M. Riehl, that our constitution does not permit the Legislature to delegate to the judiciary the task of defining, in whole or in part, what conduct constitutes criminal activity. Such a delegation is precisely what took place here because the "local judicial authority" was assigned the task of designating the areas in buildings used in connection with court proceedings in which weapons are prohibited. *See* RCW 9.41.300(1)(b). The problematic aspects of the statute do not, however, end with the improper delegation because even if such a delegation is permissible, the statute does not specifically define who or what constitutes the local judicial authority. The statute is also utterly lacking in procedural safeguards that must exist in order for any delegation of legislative authority to be constitutional. For these reasons, I respectfully dissent from the majority opinion.

I

The majority essentially determines that the Legislature may delegate to the judiciary the task of defining criminal conduct. This is an incorrect conclusion because we have consistently held that the Legislature, not the judiciary, is the branch of government that is responsible for defining the elements of a crime. *See, e.g., McInturf v. Horton*, 85 Wn.2d 704, 706, 538 P.2d 499 (1975). In *McInturff*, we stated that "[t]he power to decide what acts shall be criminal, to define crimes, and to provide what the penalty shall be is legislative." *McInturff*, 85 Wn.2d at 706; *see also State v. Ritchie*, 126 Wn.2d 388, 394, 894 P.2d 1308 (1995); *State v. Ermert*, 94 Wn.2d 839, 847, 621 P.2d 121 (1980); *State v. Carothers*, 9 Wn. App. 691, 696, 514 P.2d 170 (1973) ("The specification of the ways or modes by which a given crime may be committed is a legislative function."), *aff'd*, 84 Wn.2d 256, 525 P.2d 731 (1974). Although the majority pays lip service to the Legislature's prerogative to specify the elements of a crime, it appears undisturbed by the fact

that, in the statute before us, the judiciary has been given the responsibility of deciding where, in court buildings, it is unlawful for citizens to carry weapons. *See* RCW 9.41-.300(1)(b).[105]

The delegation of legislative authority that took place here flies in the face of the notion that the judiciary should not be in the business of creating crimes or defining criminal conduct. *See State v. Wissing*, 66 Wn. App. 745, 755, 833 P.2d 424 (noting that there exists no common law crime in Washington), *review denied*, 120 Wn.2d 1017, 844 P.2d 436 (1992); *State v. Danforth*, 56 Wn. App. 133, 137, 782 P.2d 1091 (1989), *overruled on other grounds by State v. McNallie*, 120 Wn.2d 925, 846 P.2d 1358 (1993). In my view, we should hold fast to the idea that under the doctrine of separation of powers the judicial branch may not be assigned tasks that are the functions of other branches of government. *See Carrick v. Locke*, 125 Wn.2d 129, 136, 882 P.2d 173 (1994). Because the task of deciding where it is unlawful to carry a weapon is a task that appropriately resides with the legislative branch, the delegation here is improper.

The majority incorrectly analogizes the present statute to other statutes relating to "bail jumping," "protection orders," and "criminal contempt." *See* Majority op. at 736-37. I readily agree with the majority's assertion that under the bail jumping statute[106] "[t]he court, and not the Legislature, determines the dates for the person to appear in court." Majority op. at 737. I also agree with the court that the statutes governing the issuance of protection orders[107] require the judiciary to order "whom the restrained person may or may not contact." Majority op. at 737. It is

---

[105]The statute states in pertinent part that *"[t]he local judicial authority shall designate and clearly mark those areas where weapons are prohibited,* and shall post notices at each entrance to the building of the prohibition against weapons in the restricted areas." RCW 9.41.300(1)(b) (emphasis added).

[106]RCW 9A.76.170

[107]*See, e.g.*, RCW 9A.46.080; RCW 10.99.040; RCW 10.99.050; RCW 26.50.060; RCW 26.50.110.

also correct that under criminal contempt statutes[108] "[t]he judiciary provides specifics of the offense by declaring the acts of disobedience." Majority op. at 737. What the majority overlooks, however, is that the court provides what the majority refers to as the "specifics" during the course of an adjudicative proceeding where the parties affected by the court's ruling are before the court. In other words, while the court is establishing specifics, it is acting in its official capacity adjudicating the rights and liabilities of the parties. Here, on the other hand, when the local judicial authority makes the decision imposed upon it by RCW 9.41.300, whether by resolution, rule, or court order, it is not adjudicating. There is no judicial proceeding in progress and there are no parties appearing before the local judicial authority. What takes place, instead, is that the local judicial authority is acting as a legislative body or administrative agency in adopting a rule that holds sway outside of the confines of its courtrooms. In short, the local judicial authority supplies an element of an offense that serves to proscribe certain conduct on the part of the entire populace. Such an extrajudicial proceeding stands in stark contrast to the judicial acts carried out pursuant to a court's statutory and inherent powers to set bail, punish contempt, and enter restraining orders.

I also disagree with the majority that the delegation embodied in RCW 9.41.300 is justified as merely an "acknowledgment" of the judicial branch's inherent power. *See* Majority op. at 738-39. At the same time, I readily acknowledge that judges must and do have the inherent power to ban weapons in courtrooms, jury rooms, and other facilities used in connection with court proceedings and to expel persons who violate such proscriptions. *See State v. Hartzog*, 96 Wn.2d 383, 400, 635 P.2d 694 (1981). I also recognize that judges may even enforce the ban by requiring persons entering court facilities to undergo security checks in order to make certain the court's order is followed. Indeed, a trial court has the statutory and inherent power

---

[108]RCW 7.21.010(1); RCW 7.21.040(2)(a), (5).

to impose criminal contempt sanctions for violations of its orders, provided it extends to the contemnor the due process rights that are afforded to other criminal defendants. *See In re Personal Restraint of King*, 110 Wn.2d 793, 800, 756 P.2d 1303 (1988) (citing *State v. Boatman*, 104 Wn.2d 44, 46-47, 700 P.2d 1152 (1985)). Judges may not, however, use their inherent power to make conduct that is otherwise lawful, unlawful by a court order of general application.

The judicial branch is limited to exercising powers that are essential to the existence of the court and necessary to the orderly and efficient exercise of its jurisdiction. *State v. Gilkinson*, 57 Wn. App. 861, 865, 790 P.2d 1247 (1990) (citing *In re Guardianship of Hayes*, 93 Wn.2d 228, 243, 608 P.2d 635 (1980) (Rosellini, J., dissenting)). These inherent powers are by no means absolute. "Such powers are strictly procedural in nature and do not confer *any substantive authority* nor increase the jurisdiction of the court." *Gilkinson*, 57 Wn. App. at 865 (emphasis added) (citing *Ladenburg v. Campbell*, 56 Wn. App. 701, 784 P.2d 1306 (1990)). In the case before us, the local judicial authority, at the behest of the Legislature, gave life to a criminal statute by supplying an element of the crime—designating areas in buildings housing court facilities where it is unlawful to carry weapons. The designation by the Kitsap County Superior Court judges of the entire building, which houses their court, had the effect of imposing criminal liability on Wadsworth, a person who was found carrying a small knife at the entrance of the courthouse. Making such an act illegal is power the judiciary does not possess.

## II

Even if it were constitutionally acceptable for the Legislature to delegate the task of defining criminal conduct to the judiciary, the majority simply assumes, without any analysis, that the delegation procedure embodied in RCW 9.41.300(1)(b) poses no constitutional problems. This assumption is in error because the statute is not clear as to who or what constitutes the local judicial

authority and the statute also fails to provide adequate procedural safeguards. The majority's decision fails to take into account that

> delegation of legislative power is justified and constitutional . . . [only] when it can be shown (1) that the legislature has provided standards or guidelines which define in general terms what is to be done and the instrumentality or administrative body which is to accomplish it; and (2) that procedural safeguards exist to control arbitrary administrative action and any administrative abuse of discretionary power.

*Barry & Barry, Inc. v. Department of Motor Vehicles*, 81 Wn.2d 155, 159, 500 P.2d 540 (1972) (emphasis omitted).

The delegation of legislative power here is remarkably unfettered. The statute merely instructs the "local judicial authority" to designate areas where it is unlawful to carry weapons. RCW 9.41.300(1)(b). Unfortunately, the statute provides no direction as to who or what constitutes the local judicial authority. One can reasonably ask whether the authority is vested in all of the judges of the superior court or in its presiding judge. If the superior court shares a building with the district court, which is not at all uncommon in this state, is the authority vested in an ad hoc panel of judges from both courts? If so, is the decision to be made by a majority of the judges or must there be unanimity among all the members of the local judicial authority? It is plain, in short, that the statute is significantly devoid of details as to who or what constitutes the "local judicial authority" and how it is to make the statutorily mandated decision. The constitution requires more. *Barry*, 81 Wn.2d at 159.

Another troublesome aspect of RCW 9.41.300 is the complete absence of procedural safeguards. There is, in other words, no framework under which the "local judicial authority" must act. Although courts are not administrative agencies, I would observe that such agencies are typically bound by the Administrative Procedure Act, RCW 34.05, that ensures that interested parties will be given notice and an opportunity to comment on a proposed rule before it is adopted. *Barry*, 81 Wn.2d at 164. Adequate

procedural safeguards are needed to control arbitrary government action. *Ermert*, 94 Wn.2d at 847. Here, the Legislature required the "local judicial authority" to put flesh on the bare bones of RCW 9.41.300 by designating the areas in court buildings where it is unlawful to carry weapons, and yet it was not required to give any notification to the public prior to making the designation. This is particularly problematic because the statute provides that "[t]he restricted areas *do not include* common areas of ingress and egress to the building that is used in connection with court proceedings, when it is possible to protect court areas without restricting ingress and egress to the building." RCW 9.41.300(1)(b) (emphasis added). One wonders how the local judicial authority can fairly determine if an entire building should be a restricted area without first providing the public an opportunity to comment on the appropriateness of such a restriction.

In the final analysis, the local judicial authority has been given the ultimate discretion to decide where weapons will be prohibited in buildings where court business is transacted. Even assuming the delegation of authority was proper in the first place, it is constitutionally unacceptable for the local judicial authority to exercise its discretion without supplying any opportunity for public comment. *See Biermann v. City of Spokane*, 90 Wn. App. 816, 822, 960 P.2d 434 (1998) (noting that the City's decision based on unpublished informal policy does not fulfill requirement of providing adequate procedural safeguards), *review denied*, 137 Wn.2d 1004, 972 P.2d 466 (1999). Although I quickly add that there is nothing in the record to suggest that any judicial personages have acted in an arbitrary manner, whether or not a recipient of legislative authority has acted with the utmost of judiciousness is not relevant to the inquiry of whether adequate procedural safeguards exist at the outset.

## CONCLUSION

I might have no quarrel with the statute in question,

RCW 9.41.300, if the Legislature had limited the sweep of the statute to making it unlawful to carry weapons in the areas it designated, i.e., "courtrooms, jury rooms, judge's chambers, offices and areas used to conduct court business, waiting areas, and corridors adjacent to areas used in connection with court proceedings."[109] RCW 9.41.300(1)(b). I would also not be troubled by an order of the superior court judges banning weapons in courtrooms and other areas where court business is transacted. The vice of the statute under review here is that the distinction between the role of the Legislature and that of the judiciary is blurred because the statute delegates to the local judicial authority the task of designating areas, not otherwise specified in the statute, where weapons are prohibited. It is this delegation of authority that ultimately resulted in Wadsworth's arrest for carrying his Swiss Army knife in an area that was not in the statute. Because the superior court judges made it unlawful to carry weapons anywhere in the building in which they are located, they were ultimately responsible for supplying an element of the crime with which Wadsworth was charged. This act exceeded their constitutional authority.

I, therefore, dissent.

SANDERS, J., concurs with ALEXANDER, J.

---

[109]One could reasonably argue, though, that the Legislature's designation of specific areas where it is unlawful to carry weapons, i.e., courtrooms, jury rooms, judge's chambers and the like, does not make the proscription in the statute complete because the statute still requires the local judicial authority to implement the statute by designating and clearly marking areas where weapons are prohibited, including those specifically designated. *See* RCW 9.41.300(1)(b). Because Wadsworth did not enter an area specifically listed in the statute, we need not address this issue.