**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE CIVIL SURVIVAL PROJECT, individually and on behalf of its Members and Clients, and Irene Slagle, Christina Zawaideh, Julia Reardon, Adam Kravitz, Laura Yarbrough, and Deighton Boyce, individually and on behalf of the Proposed Plaintiff Class, | No. 84015-1-I <br><br> DIVISION ONE <br><br> PUBLISHED OPINION |
| Appellants, | |
| v. | |
| STATE OF WASHINGTON, individually, and KING COUNTY and SNOHOMISH COUNTY, individually and on behalf of the Proposed Defendant Class, | |
| Respondents, | |
| ADAMS COUNTY, ASOTIN COUNTY, BENTON COUNTY, CHELAN COUNTY, CLALLAM COUNTY, CLARK COUNTY, COLUMBIA COUNTY, COWLITZ COUNTY, DOUGLAS COUNTY, FERRY COUNTY, FRANKLIN COUNTY, GARFIELD COUNTY, GRANT COUNTY, GRAYS HARBOR COUNTY, ISLAND COUNTY, JEFFERSON COUNTY, KITSAP COUNTY, KITTITAS COUNTY, KLICKITAT COUNTY, LEWIS COUNTY, LINCOLN COUNTY, MASON COUNTY, OKANOGAN COUNTY, PACIFIC COUNTY, PEND OREILLE COUNTY, PIERCE COUNTY, SAN JUAN COUNTY, | |

No. 84015-1/2

SKAGIT COUNTY, SKAMANIA
COUNTY, SPOKANE COUNTY,
STEVENS COUNTY, THURSTON
COUNTY, WAHKIAKUM COUNTY,
WALLA WALLA COUNTY,
WHATCOM COUNTY, WHITMAN
COUNTY, and YAKIMA COUNTY,
individually and as putative Defendant
Class Members,

Defendants.

SMITH, A.C.J. — The Civil Survival Project, on behalf of its members, and the named plaintiffs, on behalf of themselves and a putative class, sued Washington State and King and Snohomish Counties. They sought the return and cancellation of legal financial obligations arising from convictions rendered retroactively unconstitutional by State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021). To this end they pleaded theories of unjust enrichment and rescission and requested injunctive relief under Washington's Uniform Declaratory Judgment Act, ch. 7.24 RCW. The trial court dismissed without deciding whether to certify the class.

Williams v. City of Spokane, 199 Wn.2d 236, 505 P.3d 91 (2022), controls the resolution of this appeal. It clarifies, first, that Criminal Rule 7.8 and analogous rules provide the exclusive remedy to revisit judgment and sentences and, second, that no dispute exists under the Uniform Declaratory Judgment Act sufficient to permit injunctive relief. We therefore affirm.

FACTS

In February 2021, the Washington State Supreme Court created a sea change in our state criminal law when it issued its decision in Blake. Blake held

2

No. 84015-1/3

unconstitutional Washington's strict liability drug possession statute, voiding it and vacating Blake's conviction.  197 Wn.2d at 195.  The rippling impacts of this decision have yet to be fully realized, let alone resolved, and will not likely be for many years.  Because of the interaction between the strict liability drug possession statute and other criminal statutes—such as crimes that incorporate other crimes as an element[1] or the use of Blake-related convictions when calculating a defendant's offender score[2]—it is possible that more than 100,000 individuals were affected by Washington's decades-long enforcement of the now void law.[3]  Unspooling Blake's practical consequences for all affected individuals is, as a result, a considerable task by virtue of both its scale and its complexity.

Counties across the State, coordinating with the State itself, have sought to address Blake by vacating convictions both proactively and, in response to individual's motions to the court, reactively.  Efforts to ensure that Blake's promise is fulfilled have not, however, been limited to the executive branch of our government.  Our state Supreme Court has actively promulgated changes to court rules to enable easier access to counsel to address voided convictions.[4]

---

[1] See, e.g., RCW 69.50.407 (conspiracy).

[2] See generally ch. 9.94A RCW (Sentencing Reform Act).

[3] Throughout the course of this opinion, use of the phrases such as "Blake convictions," "Blake sentences," or "Blake LFOs" is intended to reference all convictions, sentences, or LFOs affected the Blake decision, not just those that were directly the result of strict liability drug possession convictions.

[4] These rule changes, only proposals at the outset of this litigation, have now come into effect.  See CrR 3.1(b)(2)(B) (appointment of counsel); CrR 7.8(c)(2) (vacation of judgment).  As the plaintiffs in this case point out, the amended rules apply in this instance to those "serving a sentence" as the result of the voided conviction.

No. 84015-1/4

And our state legislature has passed multiple bills that touch on the issues arising in <u>Blake</u>'s wake, the first only two months after issuance of the decision. S.B. 5092, 67th Leg., Reg. Sess. (Wash. 2021); ENGROSSED SUBSTITUTE S.B. (ESSB) 5693, 67th Leg., Reg. Sess. (Wash. 2022). The most recent legislative appropriation directs more than $100 million towards the administrative and other costs of addressing <u>Blake</u>. ESSB 5693, at 12-13.

Prioritized above all by the various governmental entities responding to <u>Blake</u> are currently imprisoned individuals for whom vacation of their <u>Blake</u> conviction would result in immediate release. However, the return and discharge of legal financial obligations (LFOs) imposed as a part of <u>Blake</u> sentences is also of great concern. LFOs comprise the gamut of fees, fines, and other financial assignments related to a criminal conviction.[5] They can range from seemingly small amounts to considerably larger ones, and can be mandatory or discretionary on the part of the trial court. Collectively, they can constitute a severe burden on a population that already faces disproportionate financial struggles; failure to pay has in some counties resulted in the debtor's incarceration.[6] Increasingly the subject of scrutiny, the harsh consequences of

---

[5] RCW 9.94A.030(31) specifically defines LFOs as that "sum of money that is ordered by a superior court of the state of Washington for legal financial obligations which may include restitution to the victim, statutorily imposed crime victims' compensation fees . . . court costs, county or interlocal drug funds, court-appointed attorneys' fees, and costs of defense, fines, and any other financial obligation that is assessed to the offender as a result of a felony conviction." As used by the plaintiffs and in this memorandum, LFOs are the broader collection of *all* financial obligations resulting from <u>Blake</u> convictions.

[6] Alexes Harris, *After Blake, will Washington state repay victims of the war on drugs?* CROSSCUT (Apr. 8, 2021) https://crosscut.com/opinion/2021/04/after-

LFOs were referenced in the <u>Blake</u> decision itself, though they were not its focus. 197 Wn.2d at 184.

This lawsuit was initiated on March 11, 2021, only two weeks after <u>Blake</u>'s issuance. Brought at first by the Civil Survival Project (CSP)—a statewide nonprofit dedicated to advancing the interests of formerly incarcerated people— on behalf of its clients and members, the suit's collection of plaintiffs was supplemented to include Irene Slagle, Christina Zawaideh, Julia Reardon, Adam Kravitz, Laura Yarbrough, and Deighton Boyce, each of whom has borne <u>Blake</u> LFOs. This group of individuals was meant to be the named members of a proposed plaintiff class representing all people affected by <u>Blake</u> LFOs.[7] The lawsuit's original defendants were the State of Washington and King and Snohomish Counties. This group, too, would be expanded, eventually encompassing all Washington counties.

The plaintiffs' goal is the return of any money paid towards an LFO downstream of a <u>Blake</u> conviction and the cancellation of any outstanding obligation. To this end they plead several legal causes of action, all couched within the framework of a putative class action. First, they bring unjust enrichment and rescission claims as to both paid and unpaid LFOs. Second, they request declaratory relief pursuant to the Uniform Declaratory Judgment Act

---

blake-will-washington-state-repay-victims-war-drugs [https://perma.cc/NGM9-6QV8].

[7] Plaintiffs proposed this definition of the class: "All individuals who, as a result of any *Blake* or *Blake*-Related Convictions, had LFOs imposed against them and/or paid LFOs that were charged, collected, received, or retained by or on behalf of Defendants and/or Defendant Class Members."

(UDJA). Through this avenue they pursue declarations from the court that: (1) their class's convictions are "void and vacated"; (2) they are entitled to recover Blake LFOs collected by the defendants; (3) defendants must cancel any unpaid LFO debt; (4) defendants must not reallocate Blake-related payments to cover other LFO balances; and (5) they request any further equitable relief deemed proper.

The case comes to us on appeal from the superior court's grant of King and Snohomish Counties' motion to dismiss, which was decided before consideration of the plaintiffs' request for class certification. The court dismissed the plaintiffs' claims of unjust enrichment and rescission after determining that Criminal Rule (CrR) 7.8 in superior courts—or its equivalent rules in courts of limited jurisdiction—is the "exclusive mechanism" to obtain the relief requested through those claims. It dismissed the request for declaratory relief after determining that CrR 7.8 and its alternatives are an "adequate alternative remedy" to declaratory relief. The court concluded that the rules of procedure do not entitle the plaintiffs' to their requested relief other than through individual motions under CrR 7.8 or its alternatives; it concluded that civil class action is an improper vehicle.

The plaintiffs appeal.[8]

---

[8] Plaintiffs initially moved for direct review from the Supreme Court. Numerous interested parties filed two amicus briefs supporting this effort, including the American Civil Liberties Union of Washington, Columbia Legal Services, the Korematsu Center, the King County Department of Public Defense, and the Washington Defenders Association. The Supreme Court denied the motion on May 4 of this year.

No. 84015-1/7

ANALYSIS

We are presented with two questions. First, whether CSP and the individual plaintiffs are barred from bringing civil class action claims to address the burden of their Blake LFOs because CrR 7.8 and its equivalent rules prohibit other avenues of relief. Second, whether the plaintiffs are nonetheless entitled to declaratory judgment. We conclude that the Washington Supreme Court definitively resolved these issues earlier this year with its holding in Williams[9] and therefore we affirm the trial court's dismissal. 199 Wn.2d at 244-49.[10]

Standard of Review

We review a trial court's CR 12(b)(6) dismissal de novo. FutureSelect

---

[9] Notably, this opinion was issued only shortly before the Supreme Court denied the plaintiffs' motion for direct discretionary review.

[10] Plaintiffs' brief on appeal also spends time addressing two ancillary claims. First, they contend that the trial court "misapplied the pleading standard" by considering certain factual claims made by the defendants. Regardless of whether the trial court took certain factual claims into account, its order of dismissal is supportable on the basis purely of legal argument, as this analysis section will demonstrate.

Second, they urge the court—which, at the time they wrote their opening brief, was the Washington State Supreme Court—to exercise its inherent "superintendence authority" to act promptly to address Blake-related quandaries. Their argument is brief and cites to two Washington cases—State v. Wadsworth, 139 Wn.2d 724, 991 P.2d 80 (2000) and State v. Bennett, 161 Wn.2d 303, 165 P.3d 1241 (2007)—neither of which explicitly discusses any "superintendence authority." Both cases do, however, mention certain inherent powers of the courts. Wadsworth, 139 Wn.2d at 740-42 (referencing inherent powers of the courts control their functions, such as by granting bail, compelling production, regulate the practice of law, and adopt rules of procedure); Bennett, 161 Wn.2d at 317, n.10 (referencing specifically the Washington Supreme Court's power, with the United States Supreme Court as an analogue). These cases seem to show that any inherent independent "supervisory" authority capable of addressing plaintiffs' claims does not reside in the Washington Court of Appeals, but rather in the Washington Supreme Court.

7

No. 84015-1/8

Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180 Wn.2d 954, 962, 331 P.3d 29 (2014).  "Dismissal is warranted only if the court concludes, beyond a reasonable doubt, the plaintiff[s] cannot prove any set of facts which would justify recovery."  FutureSelect, 180 Wn.2d at 962 (internal quotation marks omitted) (quoting Kinney v. Cook, 159 Wn.2d 837, 842, 154 P.3d 206 (2007)).  We view all facts alleged in the complaint as true.  FutureSelect, 180 Wn.2d at 962.

CrR 7.8 as the Exclusive Remedy

The central issue of the case is by what means those burdened by Blake LFOs may be relieved of that burden and regain any money already paid towards their LFOs.  Plaintiffs contend that a civil class action is an appropriate vehicle, asserting first, that case law indicating CrR 7.8 is the exclusive remedy to alter judgment and sentences in criminal cases does not apply and second, that due process weighs against the inefficiencies of case-by-case resolution required if CrR 7.8 is the exclusive remedy.  Defendants disagree, citing primarily to Williams, in which the Washington Supreme Court recently addressed the proper remedy for widespread violations in the criminal context.  199 Wn.2d at 241-47.  We agree with the defendants that Williams controls and conclude that CrR 7.8 does not violate due process.

1.  CrR 7.8

CrR 7.8 is the mechanism by which the superior courts provide for relief from a criminal judgment or order.  See CrR 1.1 (scope of criminal rules encompasses superior courts).  It allows vacation of judgments on "[a]pplication . . . made by motion stating the grounds upon which relief is asked, and

8

supported by affidavits setting forth a concise statement of the facts or errors upon which the motion is based." CrR 7.8(c)(1). The rule was originally adopted to codify the Supreme Court's 1979 holdings in State v. Scott, 92 Wn.2d 209, 595 P.2d 549 (1979), and its progeny cases that Civil Rule (CR) 60(b) "applied to the vacation of judgments or orders in criminal cases." Purpose statement to proposed amendment to CrR 7.8, 104 Wn.2d at xxxiv (Official Advance Sheet No. 13, Jan. 3, 1986).

CrR 7.8's drafting committee did not simply copy CR 60 into the criminal rules, but instead selectively excluded incorporation of those sections of CR 60 not relevant in criminal cases. Purpose statement, 104 Wn.2d at xxxiv-xxxv (giving example of CR 60(b)(7), providing relief in certain circumstances where the defendant was served by publication). Of particular concern here, the committee decided against incorporation of CR 60(c), which states that the rule "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding." CR 60(c). But the committee also rejected a proposed subsection (c) that would have explicitly made CrR 7.8 the "exclusive means whereby the court may review a judgment rendered by a superior court in a criminal case." Purpose statement, 104 Wn.2d at xxxv. This rejection was supported at the time by several arguments: that it exceeded the scope of the holdings of the Scott cases; that it ignored existing avenues for collateral attack in RCW 7.36 (Washington State's habeas statute) and RAP 16.3 (personal restraint petitions); that the committee did not wish to limit the power of

No. 84015-1/10

the superior courts without full consideration; and that CR 60's application in the criminal context was already narrow.  Purpose statement, 104 Wn.2d, supra.

        2.  Case Law Interpreting CrR 7.8's Related Provisions

The text of CrR 7.8 does not, therefore, speak directly on the question of whether it is the exclusive remedy available to those seeking to vacate a criminal judgment.  Case law has developed to address this ambiguity.  In a series of cases from the past decades, the Court of Appeals has repeatedly affirmed that provisions similar to CrR 7.8 but operative in courts of limited jurisdiction, rather than superior courts, are the exclusive means to remedy problems in criminal judgments that emerge from those courts.  Doe v. Fife Mun. Court, 74 Wn. App. 444, 451, 874 P.2d 182 (1994) (Division I addressing Criminal Rule for Courts of Limited Jurisdiction (CrRLJ) 7.8, applicable in courts of limited jurisdiction per CrRLJ 1.1, dismissing putative class action); Boone v. City of Seattle, No. 76611-2-I, slip op. at 6, (Wash. Ct. App. July 9, 2018) (unpublished), https://www.courts.wa.gov/ opinions/pdf/766112.pdf (Division I addressing Civil Rule for Courts of Limited Jurisdiction (CRLJ) 60, applicable in courts of limited jurisdiction per Infraction Rule for Courts of Limited Jurisdiction (IRLJ) 6.7(a) and IRLJ 1.1(a), dismissing putative class action); Karl v. City of Bremerton, No. 50228-3-II, slip op. at 6-7, (Wash. Ct. App. Feb. 20, 2019) (unpublished), https://www.courts.wa.gov/ opinions/pdf/D2%2050228-3-II%20Unpublished%20Opinion.pdf (Division II addressing CRLJ 60, dismissing putative class action); Williams v. City of Spokane, No. 36508-5-III, slip op. at 16-17 (Wash. Ct. App. June 18 2020) (unpublished), https://www.courts.wa.gov/

opinions/pdf/365085_unp.pdf (Division III addressing CRLJ 60, dismissing putative class action).[11]

Doe, the first of these cases, relied on by the others and holding that CrRLJ 7.8—CrR 7.8's equivalent in criminal proceedings in courts of limited jurisdiction—excludes other remedies, ruled on the basis of three factors: (1) the difference between CR 60(c)'s language explicitly permitting alternative remedies and CrRLJ 7.8's, lacking that language, implied that CrRLJ 7.8 was exclusive; (2) CrRLJ 1.1 and 1.2 indicate respectively the relevant rules govern "all" and "every" criminal proceeding; and (3) CrRLJ 1.2, directing the rules be interpreted to "secure simplicity in procedure, fairness in administration, effective justice, and the elimination of unjustifiable expense and delay," supported individualized vacation, which more effectively employed judicial resources. 74 Wn. App. at 453-55. The court wrote: "when rules are set out in detail in criminal rules, they need not be supplemented by civil rules." 74 Wn. App. at 453 (citing State v. Pawlyk, 115 Wn.2d 457, 476-77, 800 P.2d 338 (1990)).[12]

Williams, which was decided earlier this year, saw this line of precedent affirmed for the first time by the Supreme Court. 199 Wn.2d at 244 ("Williams

---

[11] GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.")

[12] In their opening brief, the plaintiffs contend that Orwick v. City of Seattle, 103 Wn.2d 249, 692 P.2d 793 (1984) stands for the "broad proposition that a superior court has authority to address 'system-wide violations' of individual rights," urging that it supervenes Doe. But Orwick instead stands for the proposition that the superior courts have *jurisdiction* over claims for equitable relief from certain systemwide violations arising in courts of limited jurisdiction. 103 Wn.2d at 252. The jurisdiction of the court is not in question here, only the available paths to relief.

would have us reject the analysis of all three divisions of the Court of Appeals and hold that *Boone*, *Karl*, and *Williams* were wrongly decided. We decline."). It also added another pillar to Doe's reasoning, saying that CRLJ 60(b)—applicable in civil proceedings in courts of limited jurisdiction—which references "the court" when describing who may relieve a party of a final judgment, refers not to any court but specifically to "the court that issued the underlying judgment." Williams, 199 Wn.2d at 242-43. It also emphasized that the purposes of judicial efficiency with which Doe was concerned applied just as directly in Williams. 199 Wn.2d at 244. In both, the plaintiffs sought to bring class actions in superior court to vacate a large number of allegedly erroneous judgments originating in courts of limited jurisdiction. Williams, 199 Wn.2d at 238 (concerning speeding tickets); Doe, 74 Wn. App. at 446-47 (concerning deferred prosecution for alcohol related criminal offenses). Williams, quoting Doe, concludes " 'that judicial resources are employed more efficiently if the party who asserts a judgment or order as being void is first required to address its concerns to the court that issued the judgment or order.' " 199 Wn.2d at 244 (quoting 74 Wn. App. at 454).

### 3. Applicability of Precedent to CrR 7.8

Williams's reading of the definite article in "the court,"[13] even if not extended to CrR 7.8, means at a minimum that any of the plaintiffs' claims regarding Blake LFOs springing from courts of limited jurisdiction *cannot* be addressed in the first instance by this class action in superior court. 199 Wn.2d at 242-43. Such claims would instead have to be severed from it for individual

---

[13] Which appears in subsection (b) of both CrRLJ 7.8 and CRLJ 60.

treatment in the relevant court of limited jurisdiction under CrRLJ 7.8 and

CRLJ 60.  The question then becomes whether CrR 7.8 should be read—like

CRLJ 60 and CrRLJ 7.8 in courts of limited jurisdiction—as the exclusive remedy

to vacate judgments in superior court.  We conclude that there is not a sufficient

basis to deviate from the reasoning of Doe, Boone, Karl, and Williams.

The difference between the text of the relevant rules—CrR 7.8, CrRLJ 7.8,

and CRLJ 60—is negligible and does not provide a basis to read CrR 7.8

separately.  The Supreme Court has already dismissed as irrelevant the

differences between CrRLJ 7.8 and CRLJ 60.  Williams, 199 Wn.2d at 244 (the

two rules "are not distinguishable in any relevant way").  And CrR 7.8 and

CrRLJ 7.8 are nearly identical.[14]  Given that, Williams's conclusion that the

language of CRLJ 60 and CrRLJ 7.8 requires a motion be brought in "the court

that issued the underlying judgment" is controlling; it applies equally to CrRLJ 7.8

and the textually indistinguishable CrR 7.8.  199 Wn.2d at 242-43.

Hoping to avoid this reading of CrR 7.8, the plaintiffs make several

arguments in an attempt to distinguish Williams and Doe.  First, they invoke the

above-mentioned Purpose statement regarding the rule-drafters discussion about

whether to include an exclusion provision.  They point out that CrRLJ 7.8 and

CRLJ 60 did not have equivalent notes for the Doe and Williams's courts to

---

[14] Save for two differences, neither relevant.  First, procedures for review—found in CrRLJ 7.8(a), (c)(2) and CrR 7.8(a), (c)(2).  Second, CrRLJ 7.8(b) reads, in part, "[a] motion under this section does not affect the finality of the judgment or suspend its operation" while CrR 7.8(b) reads, in similar part, "[a] motion under section (b) does not affect the finality of the judgment or suspend its operation."

No. 84015-1/14

consider. This is true, and provides support for the conclusion that the drafters of CrR 7.8 did not wish to address whether CrR 7.8 was exclusive. CRLJ 60; CrRLJ 7.8. But regardless of the strength of this argument, we are bound by Williams's interpretation of "the court" as an independent unambiguous basis for exclusivity, which is just as forceful regarding CrR 7.8 as it is regarding CRLJ 60 and CrRLJ 7.8. See State v. Ervin, 169 Wn.2d 815, 820, 239 P.3d 354 (2010) (courts interpreting statutes look to legislative history and other guidelines of construction only to resolve ambiguous language).

Second, the plaintiffs contend that Williams and Doe are distinguishable because they concerned relief from allegedly statutorily invalid municipal judgments imposing traffic fines and "facially unconstitutional convictions are different."[15] Citing to language in State v. Jennings, 199 Wn.2d 53, 67, 502 P.3d 1255 (2022), calling Blake convictions "constitutionally invalid," they assert the CrR 7.8 process is therefore not a prerequisite for relief, that the effect of Jennings has been to in some fashion already invalidate Blake convictions.[16] This is not Jennings's holding, and is contradicted by the plain language of CrR 7.8. Jennings held only that "[a] prior conviction that is constitutionally invalid on its face may not be included in a defendant's offender score." 199

---

[15] Wash. Court of Appeals oral argument, Civil Survival Project v. Washington, No. 84015-1-I (July 13, 2022), at 20 mins., 15 sec., audio recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2022071042/?eventID=2022071042.

[16] Wash. Court of Appeals oral argument, supra, at 1 min, 10 sec.

Wn.2d at 67 (citing State v. Ammons, 105 Wash.2d 175, 187-88, 713 P.2d 719 (1986)).

Meanwhile, CrR 7.8, contrary to the thrust of plaintiffs' argument, clearly applies to the reconsideration of constitutionally invalid convictions. It explicitly contemplates being used to address precisely this sort of issue: "A defendant is entitled to relief under subsection (i) where the person . . . is serving a sentence *for a conviction under a statute determined to be void, invalid, or unconstitutional by [the courts]*." CrR 7.8(c)(2) (emphasis added). This language was added through the amendment process initiated in the wake of Blake. Jennings cannot be read as broadly as plaintiffs suggest.

Third, the plaintiffs assert that the sheer scope of Blake's demands on the judicial system create different concerns of judicial efficiency than those present in Doe and Williams. This argument, though, however true it may or may not be, cannot rebut Williams's textual reading of the definite article in "the court." Nor does it sit well with Williams's conclusion that individualized vacations in separate courts *serve* the purposes of efficiency. 199 Wn.2d at 244. Moreover, Williams aside, plaintiffs' efficiency argument does not clearly withstand scrutiny on its merits, as discussed below in the context of their due process arguments.

We therefore hold that Williams controls. CrR 7.8 is the exclusive procedural means by which to seek refund and cancellation of superior court imposed Blake LFOs, just as CrRLJ 7.8 and CRLJ 60 are the exclusive means in courts of limited jurisdiction.

15

4. Due Process and Nelson v. Colorado

Plaintiffs next argue that Nelson v. Colorado establishes that requiring those with Blake LFOs to individually file motions under CrR 7.8 or its equivalents is a violation of due process. ___ U.S. ___, 137 S. Ct. 1249, 197 L. Ed. 2d 611 (2017). We disagree. Nelson, though it also concerned the mechanisms by which wrongly convicted individuals could recoup LFO payments made to the State, addressed a wholly different, and considerably more onerous, procedural structure.

Nelson saw the United States Supreme Court applying the Mathews v. Eldridge[17] balancing test to a Colorado post-conviction statute. 137 S. Ct. at 1255. The Mathews factors determine whether a process deprives individuals of protected rights by looking to: (1) the private interest affected by the official action; (2) the risk of that interest's erroneous deprivation through the procedures used; and (3) the governmental interest at stake. 424 U.S. at 335. Colorado required defendants whose convictions had already been reversed to "prove [their] innocence by clear and convincing evidence to obtain the refund of costs, fees, and restitution paid pursuant to an invalid conviction." Nelson, 137 S. Ct. at 1253-55. The opinion in Nelson focused on the injustice done by placing the burden on defendants to prove their innocence when their presumption of innocence had been returned at their convictions' reversal. 137 S. Ct. at 1255-56. "To comport with due process," it held, "a State may not impose anything

_____

[17] 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

16

more than minimal procedures on the refund of exactions dependent upon a conviction subsequently invalidated." Nelson, 137 S. Ct. at 1258.

Nelson did not concern whether prohibiting LFO recovery by means of a class action violated due process. It addressed the permissibility of placing a significant burden of proof on individuals whose judgments had been reversed, requiring them to demonstrate innocence even where individualized determinations as to their guilt had already been made and reversed. Though Nelson does not set forth precisely the sort of "minimal procedures" it might allow, CrR 7.8 and related rules—which require only a motion and affidavits stating the facts upon which that motion is made[18]—do not place such a burden on defendants as was present in Nelson, and could not easily be more minimal. To the extent that the plaintiffs here argue that placing *any* onus on defendants to initiate the return of their own fees violates due process, Nelson does not support them.

---

[18] The rules' sections on procedure when filing a motion to vacate, with differences italicized, read:

- CrR 7.8(c)(1): "Application shall be made by motion stating the grounds upon which relief is asked, and supported by affidavits setting forth a concise statement of the facts or errors upon which the motion is based."
- CrRLJ 7.8(c)(1): "Application shall be made by motion stating the grounds upon which relief is asked, and supported by affidavits setting forth a concise statement of the facts or errors upon which the motion is based."
- CRLJ 60(e)(1): "Application shall be made by motion *filed in the cause* stating the grounds upon which relief is asked, and supported by the affidavit of the applicant *or his attorney* setting forth a concise statement of the facts or errors upon which the motion is based, *and if the moving party be a defendant, the facts constituting a defense to the action or proceeding.*"

17

        5.   Relative Efficiency of CrR 7.8 and a Class Action

        In this context, plaintiffs and amici spend considerable time urging that an

approach to refunding and cancelling LFOs based in CrR 7.8 offends due

process because it is so inefficient that a number of Blake-affected individuals

will ultimately receive refunds too late or not at all.  Here, the relative merits of

refunding Blake LFOs through a class action or an approach based in CrR 7.8

are relevant under Mathews.  Plaintiffs and amici compellingly argue that CrR 7.8

is an imperfect method of refunding and cancelling Blake LFOs, but they do not

attempt to show how a civil class action would do better.  In fact they do not, in

any comparative analysis, demonstrate how a class action is a process less likely

to cause erroneous constitutional deprivations.

        Those seeking LFO repayment will require a similar amount of individual

treatment even through a class action.  Their volume of fines is individual, will

have been paid to different degrees, and those fines may be interwoven with the

requirements of other convictions.  For some, revisiting a judgment may leave

them open to re-prosecution at the discretion of the local prosecutor.  Plaintiffs

have not suggested a manner in which individuals will be able to receive

personalized advice on how to navigate this thicket more readily in the midst of a

class action than if they file CrR 7.8 motions.[19]  Similarly, though the plaintiffs

express concern about the burden placed on pro se individuals under CrR 7.8,

_____

        [19] Class actions typically resolve issues that are shared similarly among
class members.  CR 23(2) (members of a class may sue or be sued only if "there
are questions of law or fact common to the class").  Here, the individualized
nature of each affected person's LFO-burden makes it difficult to imagine what
question of law or fact is truly common among putative class members.

they do not explain how this burden would be alleviated by a class action, which requires class members to either accept or reject whatever class relief is ordered, typically without aid of counsel.

The class action approach has drawbacks even aside from its one-size-fits-all treatment of the problems associated with refunding <u>Blake</u> LFOs. Some of the funds generated by a class action would undoubtedly have to go towards paying class counsel, representatives, and expenses. And a class action focusing exclusively on refunding and cancelling LFOs risks complicating efforts down the line by affected individuals to vacate convictions.

The end result of a class action, as opposed to individualized vacation, may therefore be the provision of less individualized advice, the return of less of the class members' LFO payments, and complications in other <u>Blake</u> proceedings. These are not indicia of a process that is definitively more efficient and less likely to cause further constitutional harm than the individualized approach of CrR 7.8

On the other hand, a civil class action enjoys one major benefit: it would require the defendants to notify the proposed class members of their right to the return of their paid LFOs and cancellation of outstanding debts. That the putative class receives this sort of notice is certainly the goal. However, it is hardly clear that a class action would be more efficient in this regard than the efforts already funded by the State, which has devoted millions of dollars to public outreach about <u>Blake</u>. ESSB 5693, § 116(8). Plaintiffs do not attempt to explain how providing notice would be practically easier through a class action. The same

prudential concerns would be present, but addressed through a different process with purposes orthogonal to the existing efforts, creating risk of confusion.

Plaintiffs and amici have ably demonstrated CrR 7.8's shortcomings, particularly regarding pro se individuals and the possibility that placing an onus on affected individuals to bring their own motions will result in racially disparate outcomes. But they have not shown that a class action is, on balance, a more efficient process by which to refund Blake LFOs or one less likely to cause similar harms. They have not demonstrated that the difference in outcomes between the two approaches is so stark as to find application of CrR 7.8 a due process violation under Mathews, overriding the legislature's preferred approach.

We conclude that the use of CrR 7.8 and its equivalent rules as the exclusive remedy by which to revisit Blake LFOs does not violate due process.[20]

### Availability of Declaratory Relief

Plaintiffs finally argue that even if CrR 7.8 is the exclusive mechanism to vacate criminal convictions affected by Blake, they are entitled to equitable and injunctive relief under the UDJA. Williams speaks on this issue as it did on the exclusivity of CrR 7.8, saying that no dispute exists to confer standing under the

---

[20] CSP asserts that it, as an organizational plaintiff, has no means to file a CrR 7.8 motion, but nonetheless has standing to bring this lawsuit. Associational standing allows a " 'non-profit corporation or association which shows that one or more of its members are specifically injured by a government action [to] represent those members in proceedings for judicial review.' " Washington Educ. Ass'n v. Shelton Sch. Dist. No. 309, 93 Wn.2d 783, 791, 613 P.2d 769 (1980) (quoting Save a Valuable Env't v. City of Bothell, 189 Wn.2d 862, 867, 576 P.2d 401 (1978)). To the extent that associational standing is based in the standing of its members to bring actions, CSP cannot assert the ability to bring a civil claim when none of its members would individually enjoy recourse through a similar procedure.

No. 84015-1/21

UDJA. 199 Wn.2d at 247-49. We therefore conclude that the trial court did not err in dismissing the plaintiffs' equitable claims.[21]

To have standing to bring a claim under the UDJA, there must be " 'an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement.' " Williams, 199 Wn.2d at 248-49 (internal quotation marks omitted) (quoting League of Educ. Voters v. State, 176 Wn.2d 808, 816, 295 P.3d 743 (2013)). The existence of a final judgment closes the underlying contested case, foreclosing standing on the basis of that dispute. Williams, 199 Wn.2d at 248. In Williams, for a new dispute to arise sufficient to enable standing for the purposes of the UDJA, the plaintiff had to first seek to " 'reverse any ticket penalty by bringing a motion to vacate in the municipal court' " and thereby create a new dispute. 199 Wn.2d at 248 (quoting Williams, No. 36508-5-III, slip op. at 28.). The court addressed the possibility that Williams might have standing as a class representative for putative class members who might meet this requirement.

_____

[21] The trial court dismissed the plaintiffs' claims for declaratory relief because CrR 7.8 "is a completely adequate alternative remedy." To support this proposition, it cited Grandmaster Sheng-Yen Lu v. King County, 110 Wn. App. 92, 98 n. 3, 38 P.3d 1040 (2002). Grandmaster relies in turn on Reeder v. King County, 57 Wn.2d 563, 564, 358 P.2d 810 (1961) (holding that "a plaintiff is not entitled to relief by way of a declaratory judgment if, otherwise, he has a completely adequate remedy available to him."). But Reeder has been superseded by CR 57, which states: "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." New Cingular Wireless PCS, LLC v. City of Clyde Hill, 185 Wn.2d 594, 605, 374 P.3d 151 (2016) (recognizing supersession). Because we may affirm on any basis supported by the record, the precise basis for the trial court's dismissal of these claims has no impact on appeal. See Bavand v. OneWest Bank, 196 Wn. App. 813, 825, 385 P.3d 233 (2016).

21

No. 84015-1/22

<u>Williams</u>, 199 Wn.2d at 248.  He did not: "as the only named plaintiff, Williams 'must have a personal claim' for his superior court action to proceed."  <u>Williams</u>, 199 Wn.2d at 248 (quoting <u>Wash. Educ. Ass'n v. Shelton Sch. Dist. No. 309</u>, 93 Wn.2d 783, 790, 613 P.2d 769 (1980)).

The same holds true here.  No party demonstrates the existence of a dispute recognizable under the UDJA.

The plaintiffs argue that even if they lack standing under the normal analysis, they may alternatively enjoy recourse to the UDJA because the dispute pertains to an issue of major public importance.  For this proposition they cite to <u>League of Education Voters</u>, 176 Wn.2d at 816.  There, the court wrote: "[u]nless a dispute involves 'issues of major public importance, a justiciable controversy must exist before a court's jurisdiction may be invoked under the [UDJA].' "  176 Wn.2d at 816 (quoting <u>Nollette v. Christianson</u>, 115 Wn.2d 594, 598, 800 P.2d 359 (1990)).  Applying this exception to the normal rules of standing is discretionary on the part of the court.  <u>Snohomish County v. Anderson</u>, 124 Wn.2d 834, 840, 881 P.2d 240 (1994) (challenging constitutionality of Growth Management Act).  "Whether an issue is one of major public importance depends on the extent to which public interest would be enhanced by reviewing the case." <u>City of Edmonds v. Bass</u>, 16 Wn. App. 2d 488, 496, 481 P.3d 596 (2021) (challenging city gun storage ordinance).

Here, we conclude that the public interest would not be enhanced by reviewing the case and so decline to extend standing under the public importance doctrine.  Unlike other cases that apply the doctrine, this dispute is

22

not the sort of policy that lends not lends itself to quick and easy resolution through a legal ruling. It instead presents complex, fact-dependent questions of public administration in an area that has already received significant attention from many aspects of our state government. To review this case, permitting declaratory judgment and its unclear consequences, would not enhance the public interest but instead further complicate an already complicated problem.

Because the trial court correctly concluded that CrR 7.8 and similar rules are the exclusive means for plaintiffs to address their claims and because the plaintiffs are not entitled to declaratory relief, dismissal was appropriate.

We affirm.

_Smith, a.C.J._

WE CONCUR:

_____        _Mann, J._____